UNITED STATES, Appellee

v.

DONALD J. LOGAS, Private–1, U. S. Army, Appellant

2 USCMA 489, 9 CMR 119

No. 1524

Decided May 8, 1953

Lt Col Herman P. Goebel, Jr., U. S. Army, and 1st Lt Patrick H. Thiessen, U. S. Army, for Appellant.

Lt Col Thayer Chapman, U. S. Army, and 1st Lt Martin Blackman, U. S. Army, for Appellee.

## Opinion of the Court

Robert E. Quinn, Chief Judge:

The sole issue in this case is whether there is sufficient evidence to support the accused's conviction of desertion with intent to remain absent permanently. The Government established, by orders, morning reports, and stipulation, that the accused had been ordered from Camp McCoy, Wisconsin, to Fort Lawton, Washington, for shipment to the Far East. Seven days' delay en route was authorized. The accused failed to report to Fort Lawton on the date called for in his orders, and was apprehended at his home town, St. Paul, Minnesota, and returned to military control after thirty-three days of unauthorized absence.

The accused testified in his own behalf. He stated that he had recently returned to the United States after serving thirteen months in a combat infantry division in Korea. He had signed a waiver of his right to remain in the United States for one year before being once more assigned overseas so that he might volunteer to serve again in the combat theatre. Thus, according to the accused, his orders to Fort Lawton for overseas shipment were the result of his own voluntary action. He stated, in conclusion, that he wanted to return to Korea. Defense established, through stipulation, that the accused was entitled to wear the Korean Service Medal with five campaign stars, together with a "series of other decorations," not further identified.

The court found the accused guilty of desertion with intent to remain absent permanently, in violation of Article 85 of the Uniform Code of Military Justice, 50 U.S.C. § 679, and sentenced him to dishonorable discharge, total forfeiture of pay, and confinement at hard labor for three years. The convening authority and the board of review upheld the findings and sentence, except that the board of review reduced the confinement to two years. We granted petition for review, limited to the question of whether the evidence is sufficient to support the findings.

We have considered, in five previous decisions, the question of the sufficiency of evidence to support a conviction for desertion of the type here involved. United States v. McCrary (No. 4), 1 CMR 1, decided November 8, 1951; United States v. Peterson (No. 199), 3 CMR 51, decided April 17, 1952; United States v. Ferretti (No. 213), 3 CMR 57, decided April 18, 1952; United States v. Cirelli (No. 304), 4 CMR 160, decided August 8, 1952; United States v. West (No. 613), 5 CMR 18, decided August 14, 1952. We have applied the test of whether the evidence permitted a determination—beyond a reasonable doubt and within the fair operation of reason-

able minds—that the accused possessed the required intent to remain absent permanently. In weighing the evidence, we must consider the accused's uncontradicted and not inherently improbable testimony along with the undisputed facts relative to absence and apprehension established by the Government. United States v. Peterson, supra.

Here, the accused remained in an unauthorized absence status for a period of thirty-three days. The absence was terminated by apprehension. The distance from the place of apprehension to the place of duty is of little moment, since the accused had been ordered from Camp McCoy, Wisconsin, to Fort Lawton, Washington, and was authorized to visit his home in St. Paul, Minnesota, where he was taken into custody. The record does not reflect whether the accused was apprehended in uniform or in civilian clothes, and no evidence as to his activities during the period of absence was produced by either prosecution or defense. Imminent overseas service at the time of absence is a factor which normally will tend to support an inference of intent to remain absent permanently, but here this factor appears to be cancelled out by the accused's testimony—uncontradicted and, in view of other facts, reasonable—that he had volunteered for return to the combat theatre. Of minor significance —but worthy of consideration—is the fact that the accused did not present any explanation for his actions in remaining absent for slightly longer than a month.

It is apparent that the case for reversal here is not as strong as in United States v. Peterson, supra. In Peterson, the absence was for a period of forty-six days, but the accused testified that he intended to return and gave a full explanation of his conduct during the period of absence, together with a credible reason for going absent without authority. He voluntarily surrendered himself to military authority. On the other hand, the case for the Government here is not as strong as in United States v. Ferretti, United States v. West, and United States v. McCrary, all supra. The period of absence is not as long as it was in any of those four cases; there is here no factor of traveling considerable distance from the place of duty; the factor based on imminence of overseas combat duty is cancelled out by this accused's professed and uncontradicted desire for such duty; and there is no evidence that he sought civilian employment, disposed of his uniform, or travelled in such a way as to give the appearance of avoiding apprehension by the authorities. Indeed, this accused was apparently apprehended at his given, official leave address.

In United States v. McCrary, supra, the unauthorized absence period was almost two months, and was terminated by surrender. The accused did not take the stand to testify. The decisive factor in the case was, judging by the prevailing opinions, the imminence of overseas duty. Without that factor, the opinions indicate that the result might well have been otherwise. Here, the period of absence is much shorter. The accused, while advancing no explanation for his voluntary absence, did testify to a state of mind that is reasonably inconsistent with a desire to permanently avoid military service. This case does not contain the extended travel from place of duty that was involved in McCrary. While the accused here, like McCrary, was faced with imminent overseas duty, his testimony rebuts any inference that he sought to avoid such duty.

It is our conclusion, after careful scrutiny of this record and after careful comparison with our previous decisions on this issue, that we cannot sustain the conviction. We have—as in previous cases involving circumstantial evidence from which varying inferences might be drawn—applied the test enunciated by this Court in United States v. O'Neal (No. 25), 2 CMR 44, decided February 7, 1952.

Our language in United States v. Peterson, supra, is applicable:

". . . In doing this, and after viewing the record from every aspect of the evidential structure, we are firmly convinced that reasonable men must be in accord in holding that rational hypotheses other than that the accused, Peterson, intended per-

manently to abandon the naval service may be drawn from the evidence. At most—and within the fair operation of a reasonable mind—the evidence is as consistent with innocence as with guilt. . . ."

It follows that the findings of guilty of desertion must be set aside as based on insufficient evidence. The evidence is, however, adequate to establish an unauthorized absence of thirty-three days. Accordingly, the decision of the board of review is reversed and the case is remanded to The Judge Advocate General of the Army for such corrective action as may be necessary.

Judge BROSMAN concurs.

LATIMER, Judge (dissenting):

I dissent.

This case portrays aptly how we sometimes invade the field of the fact-finding tribunals even to the extent of placing inferences in the trays of a balance and arriving at a conclusion that the weight of one offsets the weight of the other, deciding, of course, that the credibility of both sources must be equal. Two quotations from the majority opinion are all that is needed to show the method by which the majority concludes the evidence is insufficient. "Imminent overseas service at the time of absence is a factor which normally will tend to support an inference of intent to remain absent permanently, but here this factor appears to be cancelled out by the accused's testimony—uncontradicted and, in view of other facts, reasonable—that he had volunteered to return to the combat theatre." "The factor based on imminence of overseas combat duty is cancelled out by this accused's professed and uncontradicted desire for such duty."

If I were to compare this case with others involving similar theories, I would not consider it controlled by United States v. Peterson (No. 199), 3 CMR 51, decided April 17, 1952. Rather I would catalogue it as being governed by United States v. Ferretti (No. 213), 3 CMR 57, decided April 18, 1952, and allied cases. To me the Peterson case is entirely different. In that case the reasons for the accused going absent and the facts and circumstances while he was in that status pointed clearly to an intent to return. He had some color of reason for leaving and he did in fact return. His statements were consistent with his conduct and both established a pattern of not intending to remain away permanently.

If we compare Peterson's testimony with the testimony of this accused we find the former meets credible standards of consistency while this equals the height of inconsistency. Here the accused sought to create the impression he wanted to go to Korea and yet he had to be apprehended to get him back to military control. I do not find one iota of evidence justifying accused's absence or explaining his reason for remaining away thirty-three days. This accused knew he was ordered overseas on a March 1952 shipment, he received his travel authorization, allowances, and leave time and yet he had to be apprehended in April 1952. This seems a bit inconsistent with a burning desire to return to Korea. Whatever original motive the accused may have had in volunteering for overseas duty, his outward manifestations thereafter, upon which an intent is generally inferred, negate any intent to return to the service. Moreover, even though he became a witness in his own behalf, his testimony did not touch on his intent. His evidence consisted of no more than a statement that his name was on the overseas order because he waived his rights to stay in the United States. That is hardly an explanation of a prolonged absence.

My associates are of the opinion the evidence of shipment overseas is of no consequence as a factor bearing on intent for the accused had previously waived his right to stay in the States and, therefore, his going or remaining absent was not influenced by a desire to miss shipment to Korea. In the first place, that view presupposes that the court-martial must accept accused's story as gospel truth. I know of no rule of law which requires that and this record gives evidence of why such a rule would be absurd. A look at the ex-

hibit showing previous convictions, which was admitted into evidence for sentence purposes, will disclose that at the time the accused volunteered, he was serving time in a stockade for a previous absence without leave. While I cannot consider this exhibit for sufficiency of the evidence, I can use it to point out the fallacy inherent in an opinion which seeks to balance off testimony without regard to interest, bias or credibility. In the second place, the view announced by the majority overlooks the fact that the accused might have changed his mind after waiving his rights to stay in the States. It must be remembered that the waiver occurred before he went absent and he may have entertained motives different than those suspected by the court.

As I view the majority opinion, it appears to me that the Court has determined what inferences the court-martial members should have drawn and those they should have rejected. This is neither our duty nor our prerogative. If the inferences drawn by the court-martial are reasonable, we should affirm. Tested by our holdings in other cases, I believe they are in this case and I, therefore, disagree with the results reached by the Court.