UNITED STATES, Appellee

v.

JOHN H. REDENIUS, Private E–2, U. S. Army, Appellant

4 USCMA 161, 15 CMR 161

No. 2450

Decided April 16, 1954

Lᴛ Cᴏʟ George M. Thorpe, U. S. Army, Lᴛ Cᴏʟ Herman P. Goebel, Jr., U. S. Army, and 1sᴛ Lᴛ Ronald C. Meteiver, U. S. Army, for Appellant.

Lᴛ Cᴏʟ William R. Ward, U. S. Army, Lᴛ Cᴏʟ Thayer Chapman, U. S. Army, 1sᴛ Lᴛ Richard L. Brown, U. S. Army, and 1sᴛ Lᴛ Roderick V. Brown, U. S. Army, for Appellee.

ROBERT E. QUINN, Chief Judge:

On October 23, 1952, the accused was convicted by a general court-martial of two specifications in violation of Article 85, Uniform Code of Military Justice, 50 USC § 679. He was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for three years. A board of review affirmed. We granted review on the following issues:

1. Whether the case involves unreasonable multiplicity.

2. Whether the instructions of the law officer on the findings were correct.

3. Whether the instructions of the law officer on the maximum sentence were correct.

The first specification alleges that the accused deserted his organization with the intent to remain away permanently, and the second alleges he quit the same organization with the intent to shirk important service. Each specification sets out the same period of absence, July 7, 1952, to September 11, 1952, and both allege the same manner of termination. At the trial, defense counsel moved to strike Specification 1 on the ground of multiplicity, but the motion was denied.

Four exhibits, each admitted without objection by defense counsel, made up the prosecution's direct case. These established that the accused was transferred by special order from the Infantry Center at Fort Benning, Georgia, to the Personnel Center, Camp Stoneman, California, for shipment to the Far East Command. Accused was to report not later than July 7, 1952, but a morning report entry dated July 24, 1952, of his organization at Camp Stoneman, showed him to be absent without leave from 12:01 a.m., July 7, 1952. A second entry, dated August 21, 1952, showed that he was dropped from the rolls, effective August 5, 1952. Civilian authorities apprehended the accused on September 11, 1952, and he was confined at Fort Leavenworth, Kansas, on September 18.

Supplementing the prosecution's evidence is the accused's testimony. He admitted that he went absent without leave on July 7, but maintained that throughout the period of his absence he always intended to return to duty. He attributed his absence to two reasons. The first was that he became engaged while on leave and overstayed his leave to get married. Shortly afterward, his wife was arrested for passing bad checks, and he remained at home in an effort to help her. When his wife was released from jail, the marriage was annulled. Instead of reporting to Camp Stoneman at that time, he determined that he would await his brother's return home. This was his second reason. After he was absent without leave for ten days, the accused made a long distance telephone call to his organization. Although instructed to report as soon as possible, he did not do so. He acknowledged the receipt of a letter regarding his absence without leave, but he also ignored that.

The law officer instructed the court on the essential elements of desertion under each specification and on the lesser included offense of absence without leave, in violation of Article 86, 50 USC § 680. Before the court closed for deliberation on the findings, a court member engaged the law officer in a discussion on the permissible findings. This discussion will be set out at length later in this opinion. After the court returned a finding of guilty on both specifications, the law officer instructed the court that the maximum sentence was a dishonorable discharge, total forfeitures, and confinement at hard labor for eight years.

We consider first the instructions of the law officer on the findings. Just before the court closed for deliberation on the findings, a court member requested additional explanation of the difference between the two specifications of desertion. The law officer restated the elements, but when this failed to satisfy the member, the following ensued:

"CAPT TAYLOR: Desertion. What is the difference between permanent desertion and desertion?

**163**

"LO: Desertion with intent to remain away permanently is not a lesser included offense of desertion to avoid hazardous duty or desertion to shirk important service. The answer to the question is: if, under Specification 2 of the Charge you find that he did not intend to shirk important service, the only choice left open to the court is the lesser included offense of absence without leave or acquittal.

"CAPT TAYLOR: Even though you found he were guilty of desertion, you couldn't find it as a lesser included offense?

"LO: I presume you mean another type of desertion. You couldn't find him guilty of that if that Specification was the only Specification in the Charge.

"CAPT TAYLOR: What I wondered, if you strike out 'with intent to shirk important service, namely: movement to Personnel Center, Camp Stoneman, Pittsburg, California, for shipment to Far East Command' or this shipment there and just leave all that out and start out with 'quit his organization and did remain so absent in desertion until apprehended' it would seem to me . . .

"LO: You do not have an offense.

"CAPT TAYLOR: In other words, you must include 'intent to remain away permanently'?

"LO: That is correct, and you cannot insert that intent to remain away permanently as a lesser included offense of desertion to shirk important service. Court will be closed."

Appellant maintains that the quoted colloquy resulted in such confusion of the issues that it was highly probable that the court regarded the instructions as a direction to find the accused guilty of desertion with the intent to remain away permanently. Although we have carefully considered this discussion, we can discover no basis for the claim of confusion. All that appears is a proper instruction to correct a court member's mistaken idea of the law. The member sought to read into the specification of desertion with the intent to shirk important service an allegation of such facts as would support, as a lesser in-

164

cluded offense, a finding of desertion with intent to remain away permanently. He was emphatically and correctly informed that the latter was not a lesser included offense of the former. United States v. Jenkins, 1 USCMA 329, 331, 3 CMR 63. Furthermore, the member was clearly instructed that if he excepted the words "intent to shirk important service," the only lesser included offense would be an unauthorized absence. In these instructions, we are unable to discern any implication, much less direction, that the court must return a finding of guilty on the particular specification under discussion or on the other specification of the charge. Nor do we find anything misleading in these instructions. Accordingly, there is no merit in the claim of error relating to them.

We turn now to the other issues. Both of these relate to multiplicity in the specifications. Insofar as that issue is concerned, the Manual provides that what is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against an accused. Manual for Courts-Martial, United States, 1951, paragraph 26b. See: United States v. Keith, 1 USCMA 442, 4 CMR 34. However, if substantial doubt exists as to the facts or the law, one transaction may be made the basis for two or more specifications. Ibid. Moreover, the Manual expressly permits a conviction for two or more offenses arising out of the same act or transaction without regard to separateness of offense. Manual, supra, paragraph 74b. Thus errors arising out of multiplicity relate only to the sentence. United States v. McCormick, 3 USCMA 361, 363, 12 CMR 117; see also United States v. Soukup, 2 USCMA 141, 7 CMR 17.

Separateness of offense exists "if each offense requires proof of an element not required to prove the other." Manual, supra, paragraph 76a(8). The test has no application to a situation in which there is but one offense committed in several ways. Desertion may possibly present that kind of a situation.

In United States v. Jenkins, supra, we discussed the offense of desertion un-

der Articles of War 28 and 58, 10 USC §§ 1499 and 1530, the immediate predecessors of Article 85, Uniform Code of Military Justice, 50 USC § 679. We there said (page 331):

> "Some arguments are advanced to the effect that the giving of the instruction can be sustained under the lesser included offense theory. Desertion with intent to remain away permanently is not a lesser included offense of desertion with intent to avoid hazardous duty. Though the latter may be considered the more cowardly, this is of little importance as Congress prescribed a number of variations in the intent with which the offense may be committed, and did not classify them as to gravity. We must, therefore, assume each different intent merely creates a separate arm of the same crime. This assumption negates any contention that one is greater or lesser than the other. Moreover, they all carry the same maximum penalty, are defined specifically as the same offense, and to all intents and purposes are on the same level. Accordingly, the arguments are neither persuasive nor sound."

This statement is in direct accord with the traditional idea of desertion as a single offense. Thus, Winthrop, in referring to the act of an officer in quitting his post without proper leave prior to acceptance of his tendered resignation in violation of then Article of War 49, 10 USC § 1520, presently Article 85(b), said:

> "The Article is simply a definition of desertion as illustrated by a particular class of cases. An officer of the army by merely resigning his commission modifies in no manner his amenability to the military law and jurisdiction. This remains unchanged until he has been officially notified of the acceptance of the resignation as tendered. If prior to such notification he assumes to abandon the service, he is a deserter under the military common law, no special statute declaring him such being required. Thus Art. 49 merely designates a certain class of officers as deserters, who, without it, would still be amenable to justice as such under the general provision of Art 47." [Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 652.]

Winthrop makes the same observation with regard to a second enlistment without a regular discharge from the first, then a violation of Article of War 50, 10 USC § 1521, now Article 85(c) (page 652):

> ". . . It is to be construed, however, not as creating an offense distinct from the desertion made punishable by Art. 47, but as indicating a specific form of such offense, or rather as declaring that the act of re-enlisting under the circumstances described shall constitute *proof of desertion* on the part of the soldier. The object of the provision evidently was to preclude the notion that a soldier could be relieved from liability as a deserter because, on abandoning his regiment, he proceeded to re-enter the service in another, or, in other words, that he could be excused from repudiating his pending contract by substituting another in its place."

No change of substance was made by Article 85. The present Article is substantially a restatement of previous provisions. Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, paragraph 164e, pages 251–253. We so held in United States v. Bondar, 2 USCMA 357, 8 CMR 157, where we said:

> ". . . The present Article 85, *supra,* does little more than combine Article 28, *supra,* and Article 58 of the Articles of War, 10 USC § 1530, and we cannot perceive, either in the language used or in the legislative history, any intent to change the prior law in this respect."

Additionally, the present Manual discussion of the offense of desertion is virtually a restatement of the discussion contained in the earlier Manual. In the latter, desertion was regarded as a single offense. In fact, its discussion so closely intermingled the different intents which could establish the offense that law officers were often led into error by failing to limit their instructions

to the particular intent alleged. See United States v. Hemp, 1 USCMA 280, 3 CMR 14; United States v. Williams, 1 USCMA 186, 2 CMR 92.

While it is true that in United States v. Aldridge, 2 USCMA 330, 8 CMR 130, and in United States v. Hemp, *supra*, we referred to the intent aspects of desertion as separate offenses, in those references we were only concerned with the requirement that instructions on the elements of the offense charged be confined to the specific facts set out in the specification. The problem here is entirely different. Hence, it is arguable that the Aldridge and Hemp cases are not controlling. However, we need not decide whether desertion is but a single offense which may be committed by any one of several different acts. We conclude that multiplicity exists in the two specifications of the charge by applying the usual standards.

In United States v. Larney, 2 USCMA 563, 10 CMR 61, we said that the Manual test of separateness of offense was founded on the rule expressed by the Supreme Court in Blockburger v. United States, 284 US 299. Blockburger states the rule as follows:

"Each of the offenses created requires proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. Gavieres v. United States, 220 US 338, 342, and authorities cited. In that case this court quoted from and adopted the language of the Supreme Court of Massachusetts in Morey v. Com. 108 Mass 433: 'A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.' "

Since a different intent is set out in each of the specifications, and present intent may be regarded as a fact, super-

ficial application of the Blockburger test makes it appear that two offenses are described. However, in Gavieres v. United States, 220 US 338, 55 L ed 489, 31 S Ct 421, cited in the Blockburger case, the Supreme Court, after noting the similarity of facts set out in the two charges, said (page 343): "it is apparent that evidence sufficient for conviction under the first charge would not have convicted under the second indictment." That situation is not present in this case.

The only material fact set out in the second specification, or found in the proof, that could give rise to an inference that the accused intended to shirk important service, at the initiation of, or during his unauthorized absence, was the imminence of shipment to the Far East Command. However, that fact appears exclusively from the accused's assignment to Personnel Center, Camp Stoneman, for such shipment. Yet, the accused's assignment to, and departure from, that same organization are material facts in proof of the specification alleging an intent to remain away permanently. Also, all of the implications of overseas service resulting from the accused's assignment to Camp Stoneman would become part of the proof of an intent to remain away permanently. Thus, in United States v. Logas, 2 USCMA 489, 491, 9 CMR 119, we said:

". . . Imminent overseas service at the time of absence is a factor which normally will tend to support an inference of intent to remain absent permanently. . . ."

See also United States v. McCrary, 1 USCMA 1, 1 CMR 1; United States v. Oliver, 2 USCMA 613, 10 CMR 111. Consequently, in desertion, imminent overseas shipment may supply an inference of two different intents, either of which is sufficient to complete the offense. As inferences, the different intents are not self-sustaining facts; instead, they find support only in the overt act. Under the allegations and proof here, the single overt act is identical for both specifications. Hence, the intent which can be inferred from it may be one or the other of the two possibilities,

but it cannot properly be split into fractions of each. Cf. Rogers v. Commonwealth, 257 Ky 495, 78 SW2d 340, 341. This is quite different from establishing separate intents as independent facts. In the latter instance, if it is assumed that Article 85 establishes different offenses of desertion, there may well be two offenses of desertion committed in the one period of unauthorized absence. Under the circumstances of allegation and proof in this case, the specifications are not separate according to the Blockburger rule, or the Manual test approved by this Court in United States v. Larney, *supra,* and United States v. Yarborough, 1 USCMA 678, 5 CMR 106.

A single offense appears in the two specifications if we apply the test of duality of duty, as set out in Soukup, *supra,* and the concurring opinion of Judge Brosman in United States v. Larney, *supra.* Both specifications described the accused as assigned to an organization at Camp Stoneman. The proof shows that the only duty imposed upon him was to remain with his organization until reassignment. When he absented himself without authority from his organization, he failed in that single duty. Where an "identification of duty" underlies two ostensibly different offenses, there is but a single offense. United States v. Larney, *supra,* concurring opinion, Judge Brosman.

For a single offense the maximum confinement was five years. Manual for Courts-Martial. United States, 1951, paragraph 127c, page 220. However, the law officer instructed the court that the maximum confinement was eight years. This was error. Equally clear is the fact of prejudice. The approved sentence includes confinement for three years only, but as we said in United States v. Cooper, 2 USCMA 333, 338, 8 CMR 133, where the law officer instructed the court that the maximum confinement was fifty years when the maximum was actually forty years:

". . . The law officer, therefore, erred in describing the maximum confinement to be fifty years. Despite the fact that the period of confinement in fact adjudged was substantially less than the maximum limit set by the law officer—twenty years as to each accused save Lucero, and, for him, eighteen years—we have no way of knowing what the sentence, as regards confinement, would have been had the court been instructed properly. For this reason the instructional error on the part of the law officer must be deemed to have been prejudicial."

The decision of the board of review is reversed. The case is returned to The Judge Advocate General of the Army for submission to a board of review for reconsideration of the sentence.

Judge BROSMAN concurs.

LATIMER, Judge (dissenting):

I dissent.

I dissent for the reasons set forth in my opinion in United States v. McVey, 4 USCMA 167, 15 CMR 167.