UNITED STATES, Appellant

v.

KENNETH LAWRENCE JOHNSON, Seaman Apprentice, U. S. Navy, Appellee

5 USCMA 297, 17 CMR 297

No. 4898

Decided December 17, 1954

CDR Richard J. Selman, USN, CDR George H. Rood, USN, and LCDR Robert R. Marsh, USNR, for Appellant.

MAJ Charles J. McCaffrey, USMCR, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The Judge Advocate General of the Navy has certified two questions for determination by this Court as provided by Article 67(b)(2), Uniform Code of Military Justice, 50 USC § 654. They are the following:

"(1) Should findings of guilty be sustained upon review as to each of two specifications alleging, respectively, desertion by enlistment in another armed force in violation of Article 85 (a) (3), Uniform Code of Military Justice, and desertion with intent to remain away permanently in violation of Article 85 (a) (1), *ibid,* when the act of enlistment alleged and proved under the former occurred during the period of absence alleged and proved under the latter?

"(2) If question (1) above is answered in the affirmative, are the two offenses 'separate' for the purpose of punishment?"

The facts out of which these issues grew are uncomplicated. On November 10, 1952, the accused was absent without leave through failure to return after being given leave from his ship, the U. S. S. BEALE (DDE–471), docked at Norfolk, Virginia. While in that status on November 20, 1952, he enlisted in the Army at Chicago, Illinois, without disclosing that he was not regularly separated from the Navy. His fraudulent enlistment was discovered on March 26, 1953, and the Army held him in confinement until May 20, 1953, at which time he was returned to Naval control at Treasure Island, California, his home station.

After being thwarted in an attempted escape, he was tried by general court-martial under three specifications alleging desertion and attempted desertion, in violation of Article 85, and two additional specifications alleging violations of Articles 86 and 95 of the Uniform Code of Military Justice, 50 USC §§ 679, 680, and 689. The court-martial returned findings of guilty on three of the specifications and imposed a sentence of reduction in rank, total forfeitures, dishonorable discharge, and two years' confinement at hard labor. The convening authority reduced the total forfeitures and confinement to one year and six months, and otherwise approved the sentence. On appeal to the board of review, the accused successfully argued that the two desertion specifications involved multiplicity and that he, therefore, could not legally be convicted and sentenced under both. The board of review so held, but affirmed the sentence as appropriate under the findings of desertion and escape from confinement. The Government moved for reconsideration of the decision; but in its

supplemental opinion denying the motion, the board of review only fortified its reasons for its original holding. Thereupon, the Navy Judge Advocate General forwarded the questions to us as set forth above. It is to be noted that our decision on the questions certified in no way affects any substantial right of the accused. He suffers precisely the same punishment regardless of which way the questions are answered.

The provisions of Article 85 with which we are concerned are clauses (1) and (3) of section (a), which provide as follows:

"ART. 85. Desertion.

"(a) Any member of the armed forces of the United States who—

(1) without proper authority goes or remains absent from his place of service, organization, or place of duty with intent to remain away therefrom permanently; or

. . . . . .

(3) without being regularly separated from one of the armed forces enlists or accepts an appointment in the same or another one of the armed forces without fully disclosing the fact he has not been so regularly separated, or enters any foreign armed service except when authorized by the United States;

is guilty of desertion."

We can dispose of the first issue without difficulty, and without regard to our findings on the second issue, by a reference to paragraph 74(b)(4) of the Manual for Courts-Martial, United States, 1951. That paragraph deals expressly with this question in the following language:

"(4) *Offenses arising out of the same act or transaction.*—The accused may be found guilty of two or more offenses arising out of the same act or transaction, without regard to whether the offenses are separate. In this connection, however, see 76a (8)."

We have heretofore held that this Manual provision is direct authority for the validity of findings of guilty under each of two or more specifications, although they are admittedly but different ways of alleging the same offense. United States v. Soukup, 2 USCMA 141, 7 CMR 17; United States v. Redenius, 4 USCMA 161, 15 CMR 161; and United States v. Larney, 2 USCMA 563, 10 CMR 61. This permits a convening authority to frame the specifications in such a way that an unexpected turn in the evidence will not result in a fatal variance nor in the necessity of disapproving a finding solely because the facts found fail to prove the offense in the particular manner alleged. See Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, pages 77 and 78. The first certified issue is, therefore, answered in the affirmative.

The second certified question presents a difficult problem. Defense counsel argue that it is incongruous for a court to hold that an accused can desert from a state of desertion. Moreover, they argue forcibly that Article 85 of the Code does not set forth separate offenses, but merely lists different ways in which the single offense of desertion can be committed. On the other hand, Government counsel take the position that separate offenses are defined by Article 85, and that sentences may, therefore, be imposed on the basis of each specification. They urge that application of the Manual test, found in paragraph 76a(8), and the principles announced by the Supreme Court of the United States, can bring but one result; i.e., that these offenses are separate.

Certain difficult fact situations which appear to smack of unfairness in doubling the punishment for what might be regarded as one omission have required this Court to seek a judicial means of answering perplexing questions. This case presents another factual version which is filled with doubt and for little reason. In the end result multiplicity would be of little importance, if the military services followed the previous rule that where an accused is found guilty of two or more offenses constituting different aspects of the same act or omission, the court-martial must limit imposition of punishment

to the act or omission in its most important aspect. When consideration is given to the principle that multiplicity applies only to sentences, a statement by the law officer to the court-martial limiting sentence by that ceiling, would dispose of much of this litigation. As a practical matter, that is the yardstick now used by the courts-martial in imposing sentence, so little, if any, change in the length of terms would be encountered. We cannot legislate to that effect, but the individual services could take the necessary action; and such a rule would assist materially in cutting down the number of issues asserted before convening authorities, boards of review, and this Court.

Having mentioned one possibility of solving future cases, we pass on to a determination of the appropriate principle in this case. To start with, if reenlistment in one service or one unit prior to discharge from another was intended to be an offense different from desertion founded on an absence with intent not to return, then there has grown up in military law an ill-advised grouping and mingling of separate and dissimilar offenses. The one proscribed by Article 85(a)(1), which we will refer to as usual desertion, requires a specific intent not to return; while the other, defined in Article 85(a)(3), hereinafter identified as reenlistment desertion, can be committed without a specific intent to remain away or perhaps even with an intent to return. The gravamen of the first crime is absence without authority; while that of the other seems to sound in breach of contract. The overt act to accomplish each may be performed at different times and under different circumstances, and one violation may have little relationship to the other. Certainly, if separability was sought, a better characterization of the reenlistment type of desertion would have been fraudulent enlistment. Yet there is a punitive article proscribing that crime and no necessity existed to legislate in that field. If a separate and distinct offense of desertion was intended, then those who drafted the early Articles of War and all Manuals up to and including the 1951 edition failed to state their intentions clearly and unambiguously.

If it was intended to define different offenses in Article 85, subsections (1) and (3), then even though unfairness results under substantially all tests that we have used in prior decisions, the two offenses here alleged and proved would be separate and each would be punishable. We can illustrate the reasons for that statement by utilizing the test urged by the Government to support its conviction in this case. The principles pressed on us are those laid down in the majority of the Federal cases, and especially that of Blockburger v. United States, 284 US 299, 52 S Ct 180, 76 L ed 306. The Supreme Court in that case couched the test in the following language:

"Each of the offenses created requires proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not."

Though phrased differently, this is the same test adopted by paragraph 76a(8) of the Manual for Courts-Martial, United States, 1951. It there reads:

"(8) The maximum authorized punishment may be imposed for each of two or more separate offenses arising out of the same act or transaction. The test to be applied in determining whether the offenses of which the accused has been convicted are separate is this: The offenses are separate if each offense requires proof of an element not required to prove the other."

It is apparent from the language of Article 85, supra, and from the Manual discussion of desertion and its proof that two elements necessary to a conviction under Article 85(a)(1) are: (1) absence without authority, and (2) intent to remain away permanently. Under Article 85(a)(3), it is necessary to prove at least the two fol-

lowing ingredients: (1) membership in an armed force, and (2) an enlistment or acceptance of appointment in the same or different armed force or enlistment in a foreign armed service without permission from the United States. A comparison of the respective elements for the assumed two offenses discloses that proof of either requires proof of an element or elements not necessary to the other. Under Article 85(a)(3), the intent to remain away permanently is not a necessary element of that offense, while under Article 85(a)(1) it is necessary. Conversely, enlistment in a sister armed force is not a necessary element under subsection (1), but it is required under subsection (3). Clearly then an application of the Manual-Blockburger test would constitute the alleged and proved crimes in this action as separate offenses.

We believe other tests would bring about the same result, but to apply them is unnecessary. Here our problem is not so much testing for separability of two known offenses as it is one of determining whether Article 85(a)(3) creates a substantive offense at all, or whether it merely prescribes a method of proving the offense proscribed by Article 85(a)(1). When we consider the reason for originally enacting the reenlistment provision, its early history, its interpretation by authorities on military law, and the fact that it was never discussed or labeled as, or bracketed with, the punitive articles until the Uniform Code of Military Justice was enacted, we reach a conclusion that Congress did not intend to create a new and separate offense, but merely sought to perpetrate a rule of evidence by which the prosecution could prove absence without authority with intent to remain away permanently.

We have previously given consideration to the question of whether, when Congress enacted the Uniform Code of Military Justice, it intended to change the existing law and create new desertion offenses. In United States v. Bondar, 2 USCMA 357, 8 CMR 157, we discussed the evolution of that crime and concluded that it did not. We there said:

"Appellate defense counsel makes much of the fact that the present wording of Article 85, supra, represents a change from preceding statutes. . . . The present Article 85, supra, does little more than combine Article 28, supra, and Article 58 of the Articles of War, 10 USC § 1530, and we cannot perceive, either in the language used or in the legislative history, any intent to change the prior law in this respect. It would be a distinct novelty to military law if absence without authority were not lesser included within the three major types of desertion and we are not disposed to adopt such a view without some positive indication of a desire for change by Congress."

Again in United States v. Redenius, supra, we noted the absence of any such positive indication by Congress in this language:

"No change of substance was made by Article 85. The present Article is substantially a restatement of previous provisions. Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, paragraph 164e, pages 251–253."

If Congress just recodified the existing law on desertion and intended no change of substance, it becomes necessary for us to determine whether an enlistment in another or foreign service without a discharge from the service in which an accused is serving was a substantive offense prior to the Uniform Code of Military Justice. This can best be done by following the history and legislative background of the relevant enactments. As we pointed out at length in United States v. Hemp, 1 USCMA 280, 3 CMR 14, historically, desertion could be committed only by absence without authority coupled with intent not to return. However, as early as 1776, an enlistment in certain Army units by a soldier without a prior discharge was recognized as a factor which would cause him to be reputed as a deserter. Those early Articles of War provided:

"Section VI

"ART. 1. All officers and soldiers, who having received pay, or having

been duly inlisted in the service of the United States, shall be convicted of having deserted the same, shall suffer death, or such other punishment as by a court-martial shall be inflicted.

. . . . . .

"ART. 3. No non-commissioned officer or soldier shall inlist himself in any other regiment, troop or company, without a regular discharge from the regiment, troop or company, in which he last served, on the penalty of being reputed a deserter, and suffering accordingly: And in case any officer shall, knowingly, receive and entertain such non-commissioned officer or soldier, or shall not, after his being discovered to be a deserter, immediately confine him, and give notice thereof to the corps in which he last served, he, the said officer so offending, shall, by a court-martial, be cashiered."

In 1874 these two Articles were re-enacted with some stylistic and substantial modifications being drafted into Article 1. These amendments are unimportant to this decision, but for purposes of clarifying the next quotation we call attention to the fact that Article 1, above quoted, became Article 47, and Article 3 became Article 50 of the 1874 Act. Winthrop in his Military Law and Precedents, 2d ed, 1920 Reprint, page 652, interpreted Article 50 of the 1874 Act in the following manner:

"RE-ENLISTING WITHOUT A REGULAR DISCHARGE: Art. 4, as has been seen, prescribes in what manner and form a soldier shall be discharged, and the present Article in effect declares that a soldier who assumes to discharge *himself* from his proper regiment, &c., i.e. to leave it 'without a regular discharge,' and enlist in another, does so at the peril of being treated as a deserter. It is to be construed, however, not as creating an offence distinct from the desertion made punishable by Art. 47, but as indicating a specific form of such offence, or rather as declaring that the act of re-enlisting under the circumstances described shall

constitute *proof of desertion* on the part of the soldier. The object of the provision evidently was to preclude the notion that a soldier could be relieved from liability as a deserter because, on abandoning his regiment, he proceeded to re-enter the service in another, or, in other words, that he could be excused from repudiating his pending contract by substituting another in its place.

"THE CHARGE. The charge under this Article should be 'Desertion in violation of the 50th Article' or 'Desertion,' simply. The act should *not* be charged as Fraudulent Enlistment; this being now—by the Act of July 27, 1892—constituted and made punishable as an offence under Art. 62."

In both the Articles of War of 1776, and those of 1874, the arrangement and collocation of the Articles created a belief that the drafters of the legislation may have been defining two separate offenses; but the wording of Article 3 of 1776 and its successor, Article 50 of 1874, are ambiguous and leave considerable doubt about separate offenses having been intended. There being ambiguity and uncertainty, it is a general rule of statutory construction that the language of an act should be taken in a sense in which it was understood and construed when enacted. The best construction we have been able to obtain from any early authority on military law is the one we have just quoted from Winthrop. Moreover, his construction seems to find support in the later Articles of War and the statements found in subsequent Manuals. In aid of that statement, we will trace the history of desertion through the 1917, 1928, 1949, and 1951 Manuals for Courts-Martial.

In the 1917 Manual, all substantive offenses were defined in Chapter XVII which was entitled "Punitive Articles." The first listed Article under that Chapter was the Fifty-fourth Article of War, and it specified the elements of fraudulent enlistment. Article of War 29, the successor to Section VI, Article 3 of 1776, and Article 50 of 1874, provided:

302

"ENLISTMENT WITHOUT DISCHARGE.—Any soldier who, without having first received a regular discharge, again enlists in the Army, or in the militia when in the service of the United States, or in the Navy or Marine Corps of the United States, or in any foreign army, shall be deemed to have deserted the service of the United States; and, where the enlistment is in one of the forces of the United States mentioned above, to have fraudulently enlisted therein."

It is to be noted that this was not a punitive article and that the phrasing of that Article is such that the first part seems to be speaking of the crime of desertion and the last part about the offense of fraudulent enlistment. Both of those offenses are delineated later in the punitive Articles of War so it would appear that this provision was not necessary to define fully either offense. Furthermore, it is important to note that the punitive Article of War which defined desertion and provided for its punishment was Article of War 58. As may be anticipated, that Article was found among those designated as punitive. In discussing the offense of desertion as defined by that Article, to wit, absence without leave accompanied by the intention not to return, the 1917 Manual at pages 201 and 202 stated:

"Definitions and Principles

. . . . . .

". . . Where a soldier, without having been discharged, again enlists in the Army or in the Militia in the service of the United States, *such enlistment is, by the twenty-ninth article, made sufficient evidence of desertion. In such a case, proof of the intent permanently to stay away from his former place of service and of the status of absence without leave therefrom are unnecessary.*

. . . . . .

Proof

. . . . . .

"(e) Where the soldier enlisted without a discharge (see twenty-ninth article), that the accused was a soldier in a certain organization of the Army as alleged; and that, without being discharged from such organization, he again enlisted in the Army, Navy, Marine Corps, or some foreign army as alleged. In this case proof of the absence without leave and of the intention not to return become unnecessary." (Italics supplied).

In the Manual for Courts-Martial, U. S. Army, 1928, Article of War 28 is the Article that defines the acts which will be deemed to constitute desertion. The second paragraph of that Article is identical with Article of War 29 found in the 1917 Manual for Courts-Martial, and quoted above. Again the Article dealing with reenlistment desertion is not designated as a punitive article; but Article of War 58, which encompasses desertion by being absent without authority with intent not to return, is so labeled. The 1928 Manual, in discussing the proof of desertion committed by going absent without leave with intent not to return, provided as follows:

"Under A. W. 28 any soldier who 'without having first received a regular discharge again enlists in the Army or in the militia when in the service of the United States, or in the Navy or Marine Corps of the United States, or in any foreign army shall be deemed to have deserted the service of the United States.' *Such enlistment is not only no defense to a charge of desertion but is prima facie proof of it. . . . In a case of a soldier enlisting without a discharge, the specification charging desertion should follow the usual form, the desertion being alleged as having occurred on the date accused absented himself without leave.* If not absent without leave before he again enlisted, he becomes so absent at that time." (Italics supplied.)

Later, in the 1949 Manual for Courts-Martial, we find a sectional arrangement and collocation of the Articles of War identical to that existing in the 1928 Manual. Again certain acts which Congress deemed to be desertion

**303**

are set forth in Article of War 28, but desertion as an offense appeared under the punitive articles in Article of War 58. Keeping in mind that the 1949 Manual is discussing a desertion predicated on an absence with intent not to return, it repeats the language quoted above from the 1928 Manual.

We have emphasized the fact that the "discussion" portions of the Manuals, when developing enlistment desertion, are always found under the particular section of the Manual devoted to absence without leave with intent not to return. This becomes of some importance because in 1928 and in 1949 we find the Manuals defining three types of desertion; namely, absence without leave accompanied by an intention not to return, or to avoid hazardous duty, or to shirk important service. When discussing the methods of committing the offense, the reenlistment type is never mentioned except as it is merged in the principles enumerating desertion based on an intention not to return. It is not set out by itself as a separate method of committing the crime; and the paragraph of the Manuals which contains the "proof," not the offense, fails to make any mention of any elements that would constitute the means of offending. The other methods of committing the offense are separately discussed in both Manuals and the elements are mentioned in the proof. It just seems to follow, from the whole case of the 1928 and 1949 Manuals, that reenlistment desertion was considered only as a means of establishing the two elements of absence and intent not to return, both being fundamental elements of the usual and historical desertion.

The specification forms for alleging desertion, found in the Appendices of the 1928 and 1949 Manuals, fortify our conclusion that over the years military law has been so interpreted. There is a proposed specification tailored for the usual type of desertion, and there is one set out for absence without authority accompanied by an intent to avoid hazardous duty or shirk important service. There is not, however, one composed for desertion based on fraudulent reenlistment; and the portions

of the Manuals we have previously quoted state that in those cases when "a soldier enlists without a discharge, the specification charging desertion should follow the usual form, the desertion being alleged as having occurred on the date the accused absented himself without leave. If not absent without authority before he again enlisted, he becomes so absent at that time."

In making the previous argument, we have not overlooked the fact that the 1951 Manual has a form specification for reenlistment desertion. This does not detract from the long-established principle, particularly in view of the fact that the wording of the 1951 Manual continues to provide that reenlisting without a discharge proves the historical desertion. In paragraph 164 *a*(3) we find the following language:

"A member of an armed force who, while in a status of being absent without proper authority, enlists or accepts an appointment in the same or another armed force, or enters a foreign armed service, *may be guilty of committing desertion by being absent without authority with intent to remain away permanently, the intent being evidenced by his act of enlisting, accepting the appointment, or entering the foreign armed service. In such a case the desertion may be alleged as having occurred on the date the accused absented himself without authority.*" (Italics supplied.)

Had the specification in this case followed the military rule that the desertion occurred on the date accused absented himself, both specifications would have alleged that the accused deserted the service on November 10, 1952, by going absent without leave with intent to remain away permanently. Under those circumstances, we would have two specifications alleging the same desertion, with the same elements and for the same period of time. That would not have been pleading two offenses arising out of the same transaction, nor alleging different methods of committing the same crime. That would have been twice stating the same

304

transaction, the same method of commission, and the same offense. Therefore, when the court-martial was permitted to consider the maximum sentence for both specifications, it was allowed to calculate double punishment. That is contrary to the Manual and to the law.

Accordingly, the second certified question is answered in the negative, and the decision of the board of review is affirmed.

BROSMAN, Judge (concurring):

Although I hold no unyielding conviction to the contrary, I hesitate for the present, at least, to associate myself with my brothers' recommendation of a return to the "most important aspect" limitation of punishment. I do not quite share the confidence they seem to possess that such a change will constitute a panacea. Indeed, I seem to recall that prior to the Code the services experienced no little difficulty in administering the old approach. What I am afraid of, in short, is that the proposed return may raise as many problems as it solves.

In view of its dicta character, however, I feel sure that the inclusion of the suggestion in the principal opinion does not require that I do less than concur outright. I certainly agree with the majority that—in view of the derivation of Article 85(a)(3)—it cannot serve here as a basis for additional punishment.

QUINN, Chief Judge (concurring in the result):

In United States v. Redenius, 4 USCMA 161, 15 CMR 161, we discussed the general question of whether the several subsections of Article 85 actually state a single offense which may be committed in a number of different ways. We held there that it was unnecessary to decide that issue. It is equally unnecessary here.

Although I do not agree with the principal opinion's attempt to distinguish the gravamen of an act of desertion from that of an improper reenlistment, I need not elaborate on my own views. I am satisfied that the historical treatment of reenlistment without a proper termination of the original service is merely a form of desertion with intent to remain away permanently. Consequently, I concur in the result.