UNITED STATES

v.

**Staff Sergeant Courtney A. WALKER,
FR 381–64–6309, United States
Air Force.**

**ACM 26250.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 29 June 1987.

Decided 6 July 1988.

Appellate Counsel for the Appellant:
Colonel Leo L. Sergi, Major Deborah A.

Baker and Major G. Michael Lennon, USAFR.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Lieutenant Colonel Morris A. Tanner, Jr.

Before LEWIS, MICHALSKI and BLOMMERS, Appellate Military Judges.

## DECISION

BLOMMERS, Judge:

This case presents two unique and interesting issues. The appellant was charged with, among other offenses,[1] desertion with intent to shirk important service, to wit: his trial by court-martial. As to this charge, he entered a plea of guilty, by exceptions and substitutions, to desertion with intent to remain away permanently. After conducting the *Care* inquiry[2] in this bench trial, the military judge accepted the plea, but after hearing all the evidence found the appellant guilty as charged (except for an allegation that the absence was terminated by apprehension). A short recitation of the facts is in order.

After investigation by the Security Police, it was determined that the appellant had stolen about $100.00–$125.00 from a unit coffee fund maintained in the building where he worked. Earlier he had provided a sworn statement in which he denied any involvement in the theft. On 3 April 1987, charges alleging the larceny and false swearing offenses were preferred, referred to trial by special court-martial, and served on the appellant. After being advised he could possibly receive a bad conduct discharge and six months confinement, and after visiting the area defense counsel, the appellant drove around for awhile and then cashed three checks at the NCO Club (which formed the basis for charges of uttering worthless checks with intent to defraud). He left the local area. He subsequently returned and was found at his off-base quarters by a co-worker on 25 April 1987. He was then returned to military control and placed into pretrial confinement. Additional charges were preferred, and were referred to trial by general court-martial on 27 May 1987 together with the original charges.

At trial, the government called two witnesses who gave testimony regarding the desertion charge relevant to the issues we will be addressing. The appellant's unit commander, Captain Sinquefield, testified that he had preferred the charges against the appellant on 3 April 1987. He advised the appellant to consult with the area defense counsel and then report back to his duty section. The appellant was also advised of what the maximum penalty could be if he were convicted by special court-martial, and cautioned against doing anything further to aggravate his situation, like committing any further infractions, including going AWOL. The appellant did not return to his duty section that day. Captain Sinquefield later learned he had departed the local area. During his absence, unit personnel lent assistance to the appellant's wife to insure she had money to pay for rent, utilities and food for herself and her two children. Captain Sinquefield, who had been serving in the military for 21 years, also testified that he felt court-martial proceedings were "very important service no matter what your part in it is, as a panel member or if the proceedings are directed against you." He believed courts-martial were "the foundation for the military justice system and discipline in the military." Lieutenant Colonel Easterly, a squadron commander from another unit who had served as the military magistrate at the appellant's pretrial confinement hearing, (*see* R.C.M. 305(i); Air Force Reg-

---

1. Consistent with his pleas, he was also found guilty of theft of over $100.00 from a unit coffee fund, false swearing, and uttering three checks with intent to defraud (each check made the subject of a separate specification) in violation of Articles 121, 134 and 123a, U.C.M.J., 10 U.S.C. §§ 921, 934, 923a, respectively. His sentence, as adjudged and approved, extends to a bad

conduct discharge, confinement and forfeiture of $350.00 pay per month for 22 months, and reduction to the lowest enlisted grade, airman basic.

2. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

ulation 111–1, Military Justice Guide, para. 3–24 (Aug. 1984)) also testified. During the hearing he asked the appellant why he had run away. Colonel Easterly stated "that he was concerned about a dishonorable discharge, or a bad conduct discharge ... and he thought that that was just horrible if it were to happen to him, and that he decided to leave. I asked him if he was going to return, and he said, no, he was not going to come back alive." Regarding the import of military court-martial proceedings, Colonel Easterly, who had 16 years in the service, testified:

My opinion is that court-martial proceedings are part and parcel to the military justice system. The military justice system is the linchpin of the military as a unique and separate form of service to the nation, an obligation. We ask a lot of our military members. We are governed by a different set of rules and a different set of traditions than the civilian environment, one of which is command, another of which is following orders, and certainly our Uniform Code of Military Justice and the court-martial system form one of the major means of enforcing those unique rules that we place upon ourselves and that military members freely put themselves under when they join the military.

■ The first question we must address is whether the appellant's presence at his special court-martial was "important service" as contemplated under Article 85, U.C.M.J., 10 U.S.C. § 885. We conclude

that it was not. The Code itself simply provides that a member of the armed forces who "quits his unit, organization, or place of duty with intent to avoid hazardous duty or shirk important service" is guilty of desertion. The Manual for Courts-Martial provides some examples of what may or may not constitute important service, but indicates that whether a service is important "depends upon the circumstances of the particular case, and is a question of fact for the court-martial to decide." [3]

Our research reveals that since commencement of the Court–Martial Reports in 1951, there have been over 150 reported cases that either directly involved or made reference to the offense of desertion with intent to shirk important service. The vast majority of these cases occurred during our involvement in the Korean and Vietnam conflicts and concerned service members serving in the area of conflict, providing support for combat activities even though stationed far from the area of conflict itself, or receiving orders to report for duty with a unit either serving in or destined for the area of conflict. In fact, since our official involvement in Vietnam ended in 1973, there have been only eight such cases, and in only two of those was desertion with intent to shirk important service the charged offense. In only one of all these cases, a very recent case decided by the Navy–Marine Corps Court of Military Review, did the desertion offense charged result from the application of a part of our

---

**3.** M.C.M., 1984, pt. IV, para. 9c(2)(a) provides: "Hazardous duty" or "important service" may include service such as duty in a combat or other dangerous area; embarkation for certain foreign or sea duty; movement to a port of embarkation for that purpose; entrainment for duty on the border or coast in time of war or threatened invasion or other disturbances; strike or riot duty; or employment in aid of the civil power, in, for example, protecting property, or quelling or preventing disorder in times of great public disaster. Such services as drill, target practice, maneuvers, and practice marches are not ordinarily "hazardous duty or important service." Whether a duty is hazardous or a service is important depends upon the circumstances of the particular case, and is a question of fact for the court-martial to decide.

The examples given have remained essentially the same for decades. See M.C.M., U.S. Air Force, 1949, para. 146a; M.C.M., 1951, para. 164a(2). The provision that determination of whether a duty is hazardous or service important is a question of fact was added in the 1969 Manual. M.C.M., 1969 (Rev.), para. 164a(2). This derived from case law. See, e.g., United States v. Smith, 18 U.S.C.M.A. 46, 39 C.M.R. 37 (1968); United States v. Hyatt, 8 U.S.C.M.A. 67, 23 C.M.R. 291 (1957); United States v. Barrett, 22 C.M.R. 426 (A.B.R.1956). Previously, for example, it had been held that foreign duty or duty at sea were per se important. United States v. Wimp, 4 C.M.R. 509 (C.G.B.R.1952); United States v. Herring, 1 C.M.R. 264 (A.B.R.1951), pet. denied 1 C.M.R. 99 (1951).

disciplinary system. *United States v. Wolff*, 25 M.J. 752 (N.M.C.M.R.1987). In *Wolff*, the "important service" charged was the service of a 30–day sentence to confinement. The Navy court held "as a matter of law that serving ordinary brig time as a result of a summary court-martial conviction for unauthorized absence does not constitute 'important service' as envisioned by Congress when it enacted Article 85, UCMJ." *Id.* at 754. Neither do we find that the appellant's appearance at his special court-martial on charges of larceny and false swearing constitutes "important service" within the bounds of this codal provision.[4] Our decision is limited to the circumstances of the case *sub judice*. We are not saying that involvement in a particular court-martial proceeding could never constitute "important service," although we find it difficult to think of a situation where an accused's presence at his or her own trial could be so characterized.[5] We certainly recognize that discipline is a cornerstone in building any effective armed force, and the "important" role that the Uniform Code plays in the maintenance of discipline within the United States armed forces. In fact, two years before the Navy Court's decision in *Wolff*, Judge Mitchell of that court wrote: "The UCMJ establishes a disciplinary system for the armed forces. It has as its purpose the securing from its members the prompt obedience to lawful orders and the maintenance of the orderliness and self-discipline necessary to the effective operation and control of an armed force in combat." *United States v. Van Steenwyk*, 21 M.J. 795, 801 (N.M.C.M.R. 1985). *See also Parker v. Levy*, 417 U.S. 733, 743–45, 94 S.Ct. 2547, 2555–57, 41 L.Ed.2d 439 (1974); *O'Callahan v. Parker*,

395 U.S. 258, 281–83, 89 S.Ct. 1683, 1695–96, 23 L.Ed.2d 291 (1969) (Justice Harlan, dissenting); M.C.M., 1984, Pt. I (Preamble), para. 4; *Congressional Floor Debate on the U.C.M.J.*, *supra* at 262. However, we are simply not convinced as a matter of law that the accused's presence at his special court-martial for larceny and false swearing charges constitutes "important service" as contemplated under Article 85 of the Code. *See United States v. Deller*, 3 U.S. C.M.A. 409, 12 C.M.R. 165, 168 (1953).

We now face perhaps a more difficult legal issue: what finding of guilt with respect to the appellant's period of absence can be approved? Appellate government counsel make a persuasive argument that a finding of guilty of desertion with intent to remain away permanently, based upon the appellant's plea as found provident by the military judge, may be sustained.

■ First, we note that desertion consists of "an unauthorized absence accompanied by one of three different states of mind: (1) an intent to remain away permanently; or (2) an intent to avoid hazardous duty; or (3) an intent to shirk important service." *United States v. Roa*, 12 M.J. 210, 214 (C.M.A.1982) (Judge Cook concurring). *See also United States v. Aldridge*, 2 U.S.C.M.A. 330, 8 C.M.R. 130, 132 (1953); *United States v. Hemp*, 1 U.S.C.M.A. 280, 3 C.M.R. 14 (1952). Thus, Article 85 spells out three different offenses, each involving a separate and distinct specific intent.[6] *See United States v. Aldridge*, *supra; United States v. Sparks*, 15 C.M.R. 494 (A.B.R. 1954); *United States v. Greer*, 12 C.M.R. 499 (A.B.R.1953). The only lesser included offense to desertion referenced in the Man-

4. For discussion, in general, of what may or may not constitute "important service" *see United States v. Merrow*, 14 U.S.C.M.A. 265, 34 C.M.R. 45 (1963); *United States v. Hyatt, supra; United States v. Deller*, 3 U.S.C.M.A. 409, 12 C.M.R. 165 (1953); *United States v. Tiller*, 48 C.M.R. 583 (C.G.C.M.R.1974); *United States v. Moss*, 44 C.M.R. 298 (A.C.M.R.1971); *United States v. Land*, 37 C.M.R. 921 (A.F.B.R.1967); *United States v. Poper*, 13 C.M.R. 786 (A.F.B.R.1953). Our review of the legislative history of the U.C. M.J. and other historical sources revealed no additional guidance. *See Index* and *Legislative History*, U.C.M.J. (1949), at 1225; *Congressional*

*Floor Debate on the Uniform Code of Military Justice*, Dept. of Navy Pam. 9ND–P–1978; Winthrop, *Military Law and Precedents*, 2d Ed. (1920) at 636–649.

5. We note that some parts of our judicial process, including trial after arraignment, can be conducted in the accused's absence. *See* R.C.M. 405(h)(4), 802(d), 804 and 1104(b)(1)(C).

6. There is a fourth type of desertion proscribed by the Article as well, desertion by enlistment in another armed force. Article 85(a)(3), U.C.M.J.

ual for Courts–Martial is absence without leave in violation of Article 86 of the Uniform Code, 10 U.S.C. § 886. M.C.M., 1984, Pt. IV, para. 9d. *See also United States v. Redenius,* 4 U.S.C.M.A. 161, 15 C.M.R. 161, 164 (1954);[7] *United States v. Bondar,* 2 U.S.C.M.A. 357, 8 C.M.R. 157 (1953); *United States v. Arnett,* 42 C.M.R. 592 (A.C.M. R.1970), *pet. denied* 42 C.M.R. 355 (1970). R.C.M. 910(a)(1) provides in part: "An accused may plead not guilty or guilty. An accused may plead, by exceptions or by exceptions and substitutions, not guilty to an offense charged, but guilty to an offense included in that offense." Thus, the appellant in this case entered a plea of guilty by exceptions and substitutions to an offense not charged nor included within the offense charged.[8]

◼ From a reading of *Redenius* and *Jenkins,* it would appear that the only offense which we could affirm in this case would be an unauthorized absence. However, both those cases were contested, whereas here we are dealing with a plea of guilty. Therein lies a significant difference. By his plea, we find that the appellant in essence asked that the specification be amended, and that the military judge by accepting the plea in effect granted the request. Irregular, yes; but not unlawful under the circumstances of this case. There is little doubt but that this constitutes a "major change" to the specification, because it created a new offense. *See* R.C. M. 603. Generally, that would require a new swearing of the charges, investigation, and referral. However, R.C.M. 603(d) provides: *"Major changes.* Changes or amendments to charges or specifications other than minor changes may not be made over the objection of the accused unless the charge or specification affected is preferred anew." The Rule defines minor changes as "any except those which add a party, offense, or substantial matter not fairly included in those previously preferred, or which are likely to mislead the accused as to the offenses charged." R.C. M. 603(a). Since the change here was initiated by the appellant, and no objection was raised at any time during the trial proceeding, we find no procedural requirement for a re-preferral of the charges. *United States v. Shores,* 16 M.J. 546 (A.C.M.R. 1983); *United States v. Reynaud,* 16 M.J. 744 (A.F.C.M.R.1983); *United States v. Logan,* 13 M.J. 821 (A.C.M.R.1982), *pet. denied* 14 M.J. 206 (C.M.A.1982). *See also United States v. Napier,* 20 U.S.C.M.A. 422, 43 C.M.R. 262 (1971); *United States v. Taylor,* 15 U.S.C.M.A. 565, 36 C.M.R. 63 (1965); *United States v. Sledge,* 48 C.M.R. 869 (A.C.M.R.1974). Also pertinent to our reaching the conclusion that a finding of guilty of desertion with intent to remain away permanently may be sustained are: (1) that the two offenses at issue are included in the same article of the Code and are similar in nature; (2) the specification together with the plea properly sets forth an offense, fully places the appellant on notice of what offense he is pleading guilty to, and protects him from subsequent prosecution for the same offense; (3) the *Care* inquiry indicates that the appellant believes he is guilty and the factual circumstances revealed by him support the plea; and (4) the record reveals no indication that the

7. "... [A] member sought to read into the specification of desertion with intent to shirk important service an allegation of such facts as would support, as a lesser included offense, a finding of desertion with intent to remain away permanently. He was emphatically and correctly informed that the latter was not a lesser included offense of the former. *United States v. Jenkins,* 1 U.S.C.M.A. 329, 331, 3 C.M.R. 63 (1952). Furthermore, the member was clearly instructed that if he excepted the words 'intent to shirk important service,' the only lesser included offense would be an unauthorized absence."

8. We note that in the past, military courts have held that an accused could be charged with and convicted of two different types of desertion, both alleging the same period of unauthorized absence. The question then became one of multiplicity as to sentence. *See, e.g., United States v. Johnson,* 5 U.S.C.M.A. 297, 17 C.M.R. 297 (1954); *United States v. DeHart,* 4 U.S.C.M.A. 556, 16 C.M.R. 130 (1954); *United States v. Redenius, supra,* all holding they are multiplicitous for sentencing purposes. In *United States v. Sparks,* 15 C.M.R. 494 (A.B.R.1954), an Army Board of Review held desertion with intent to remain away permanently and with intent to shirk important service were separate offenses for both findings and sentence. *See also United States v. Greer,* 12 C.M.R. 499 (A.B.R.1953).

appellant was in any way prejudiced, misled, or denied due process. *See United States v. Watkins*, 21 M.J. 208 (C.M.A. 1986); *United States v. Davenport*, 9 M.J. 364 (C.M.A.1980); *United States v. Buswell*, 22 M.J. 617 (A.C.M.R.1986); *United States v. Michaels*, 3 M.J. 846 (A.C.M.R. 1977).

Only so much of the findings of guilty of Additional Charge I and its Specification as finds that the appellant did on or about 3 April 1987, without authority and with the intent to remain away therefrom, permanently absent himself from his place of duty, to wit: Building 233, located at Blytheville Air Force Base, Arkansas, and did remain so absent in desertion until on or about 25 April 1987, are approved.

 It is also asserted that the appellant is entitled to an additional credit against his sentence to confinement because the time he spent in pretrial confinement (he was placed in confinement upon his return to military control and remained in that status until his trial, some 65 days later) was unlawful in that no memorandum was prepared by his commander as required by R.C.M. 305(h)(2)(C). It is true that the commander did not prepare a written memorandum as required by the Rule, however, he did appear and give sworn testimony before the military magistrate who conducted the hearing to determine whether continued pretrial confinement was necessary in the appellant's case. *See* R.C.M. 305(i); A.F.R. 111–1, para. 3–24. The purpose of the memorandum is to assist the hearing officer in reviewing the case. We find his testimony to be an adequate substitute for the written memorandum in this case. The asserted error is without merit. *Cf. United States v. Lynch*, 13 M.J. 394 (C.M.A.1982).

Reassessing the sentence based upon our modification of the findings, we find appropriate and approve only so much of the sentence as provides for a bad conduct discharge, confinement and forfeiture of $350.00 pay per month for twenty (20) months and reduction to airman basic. We note that all of the circumstances surrounding the initiation of the appellant's

unauthorized absence would have been admissible regardless of the type of desertion charged. R.C.M. 1001(b)(4). Accordingly, the findings and sentence, both as modified herein, are

AFFIRMED.

Senior Judge LEWIS and Judge MICHALSKI concur.