UNITED STATES, Appellee

v

LARRY J. ROSEN, Specialist Third Class, U. S. Army, Appellant

9 USCMA 175, 25 CMR 437

No. 10,269

Decided April 18, 1958

 

*First Lieutenant Judson A. Parsons, Jr.*, argued the cause for Appellant, Accused. With him on the brief were *Major Frank C. Stetson* and *First Lieutenant Robert J. Hearon, Jr.*

*First Lieutenant Thomas M. Lofton* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John G. Lee* and *Major Thomas J. Nichols.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Disappointed in the rejection of his application for Officer Candidate School, the accused determined "to show the Army that . . . [he] was better than they were." He became a "big-time" operator with "an angle for everything." As a result of his operations, 18 charges of violations of the Uniform Code of Military Justice were filed against him. He pleaded guilty to all charges, except one alleging desertion in violation of Article 85, 10 USC § 885. He was convicted as charged.

This appeal presents the question of whether Charge I and Charge II are multiplicious. If they are, the limits of punishment considered below are erroneous, and reassessment of the sentence is required.

Thirteen specifications of misconduct were laid under Charge I as violations of Article 132, Uniform Code of Military Justice, 10 USC § 932, which pertains to frauds against the Government, and one specification of larceny, in violation of Article 121, 10 USC § 921, was pleaded in Charge II. From the allegations in the specifications, the Article 32 investigation, and the accused's testimony in mitigation at the trial, it ap-

pears that the accused met a girl in North Carolina whom he was "supposed" to marry but never did. Nevertheless, on February 17, 1956, he filed an application for a Class Q (dependency) allotment for her as his wife. This act forms the basis of specification 7, Charge I. While the application was pending, the accused became associated with a girl in Hopkinsville, Kentucky, and they lived together as man and wife. When the girl became ill, the accused had her admitted as his wife to the Army hospital. "As fate would have it," the girl was recognized by someone who knew she was not married. An investigation was started. The accused became "scared." He concluded that he had better "run." However, he needed money. His "nice evil brain" produced a scheme "which worked." In his words, "I discharged myself, reenlisted myself, placed myself on TDY to New York." On April 25, 1956, armed with three self-prepared military pay orders the accused went "to Finance—no catch; got the money and left."

The three pay orders were presented to the finance clerks by the accused. One purported to be an authorization for payment of mustering out pay, accrued leave, and soldier's deposits in the total

176

amount of $408; the second represented a bonus in the amount of $842.40 for a purported reenlistment; the third was for an advance of $268.60 for travel pay and a per diem allowance for ostensible temporary duty in New York. The preparation and use of these three documents were made the basis of the remaining 12 specifications of Charge I.

Grouped according to pay orders, the specifications allege the following: That on April 25, 1956, the accused *presented* for approval and payment a false and fraudulent claim against the United States for $408.00 for mustering out pay, etc., by presenting military pay order "number 2 Hq Co 98, dated 25 April 1956" (specification 1); that for the purpose of obtaining $408.00 the accused *made and used* military pay order number 2 Hq Co 98 which contained a false statement to the effect that he was authorized an honorable discharge and entitled to mustering out pay (specification 2); that for the purpose of obtaining payment of a claim against the United States *he forged the signature of* H. V. Judson on military pay order number 2 Hq Co 98 (specification 8); and that for the purpose of obtaining payment of the claim *he used the signature* of H. V. Judson on the same military pay order which signature he knew to be false (specification 11). The same pattern of alleging four separate charges is followed in regard to pay order number 2 Hq Co 99 in the amount of $842.40 (specifications 3, 4, 9 and 12) and pay order number 2 Hq Co 100 in the sum of $268.60 (specifications 5, 6, 10 and 13). The total amount of the pay orders, $1519.00, was made the subject of the separate larceny specification under Charge II.

The question before us has two aspects. The first is whether the specifications relating to a particular pay order allege separate offenses; the second is whether the specifications of Charge I are, for the purposes of punishment, duplicated in Charge II. In our opinion, each group of four specifications relating to an individual pay order states but a single offense. Although the specifications charge violations of different subdivisions of Article 132 (see United States v Steele, 2 USCMA 379, 9 CMR 9), the evidence shows that the acts "are not separate steps in the same transaction—they merge into one step." United States v Leach, 5 USCMA 466, 470, 18 CMR 90. Cf. United States v Rohleder, 157 F2d 126 (CA 3d Cir) (1946). As the board of review said in United States v Pallay, CM 398142, January 21, 1958: "At least for punishment purposes, that one act on the part of the accused should not be the basis for both the making and presentment for payment of a false claim." Consequently, the 13 specifications of Charge I actually allege only four separate offenses carrying a maximum confinement of 20 years instead of 65 years, which was the period considered below. As far as the specifications in Charge I and Charge II are concerned the Government concedes that if the accused had made an "intelligent objection" to the multiplicious nature of the charges our holding in United State v Brown, 8 USCMA 18, 23 CMR 242, would require reassessment of the sentence. See also United States v Posnick, 8 USCMA 201, 24 CMR 11. At the trial, defense counsel did object to the law officer's instruction on the maximum punishment. In addition, the evidence shows that the charges are duplicative. United States v Walker, 8 USCMA 640, 25 CMR 144; United States v Hood, 8 USCMA 473, 24 CMR 283.

The decision of the board of review as to the sentence is reversed. The record of trial is returned to The Judge Advocate General for reference to the board of review for reassessment of the sentence in the light of this opinion.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in the result) :

I concur in the result. In so doing, I go no further than to agree with my associates that the specifications laid under Article 132 of the Code, 10 USC § 932, are multiplicious for sentence purposes.

The specifications with which I am concerned allege—as the majority opinion points out—that in his dealings with each of three individual pay orders, accused committed a group of four separate offenses for a total of twelve crimes. The groups are alleged as violations of (1) (B), (2) (A), and (2) (C) of Article 132 of the Uniform Code. In United States v Johnson, 5 USCMA 297, 17 CMR 297, and United States v Redenius, 4 USCMA 161, 15 CMR 161, we held that an accused, for a single unauthorized absence, could be punished only for one of the three forms of desertion under Article 85 (a), Uniform Code of Military Justice, 10 USC § 885, because that statute merely sets forth different ways in which the single offense of desertion can be committed.

Likewise, in United States v Smith, 7 USCMA 102, 21 CMR 228, we indicated that certain subsections of Article 132, supra, "merely set out different methods of committing the same offense." Under the rationale of those cases, it is apparent that this accused, in three instances, was sentenced for having committed four offenses when legally he could only be punished for one.

I express no opinion on the larceny for the reason that the accused pleaded guilty and the facts of the case are not before us properly. Looking solely to the specifications, I have no way of ascertaining whether, in fact, there is multiplicity.

Accordingly, I concur in the result.