UNITED STATES, Appellant and Cross-Appellee

v

SAM W. McCLARY, Private First Class, U. S. Army, Appellee and Cross-Appellant

10 USCMA 147, 27 CMR 221

Major Thomas J. Nichols argued the cause for Appellant and Cross-Appellee, United States.

First Lieutenant Frank J. Lane, Jr., argued the cause for Appellee and Cross-Appellant, Accused. With him on the brief were Colonel James Garnett, Lieutenant Colonel Ralph Herrod, Captain John F. Christensen, First Lieutenant Neil Flanagin, and First Lieutenant Jackson L. Kiser.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was convicted of larceny of a quantity of paint belonging to the United States Government of a value in excess of $50.00. The theft occurred on the 5th day of November 1957. He was found guilty of selling the same military property on November 7, 1957. In addition, he was convicted of similar illegal transactions in regard to more than $50.00 worth of glass substitute owned by the Government. In the latter scheme, the theft occurred on December 6, 1957, and the sale occurred on the following day. Another conviction of a third larceny is not involved in the certified issue. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for fifteen years. The convening authority approved the findings and sentence except that he reduced the period of confinement to ten years. Thereafter, a board of review in the office of The Judge Advocate General of the Army held that each larceny and the subsequent disposition of the same property were a single transaction since the thefts were committed for the purpose of making wrongful sales. Having reached that conclusion, the board found multiplicity with a consequent error in the law officer's instruction on maximum sentence. To purge the error of prejudice the board reduced accused's term of confinement to four years but otherwise affirmed the sentence. The Acting The Judge Ad-

vocate General of the Army certified the record to us for a determination of the correctness of the board of review's holding on that issue. Thereafter, the accused filed a petition for review in which he asserted there were other errors in the record which entitled him to a reversal. The two assignments of error upon which we granted his petition concern the appropriateness of the law officer's instructions. We shall dispose of them before discussing the certified issue.

I

In instructing on the question of credibility of witnesses, the law officer charged the court as follows:

". . . You are the sole judges of the credibility of all the witnesses. In other words, you alone are to determine whether to believe any witness, and the extent to which any witness should be credited. And, in reaching a conclusion as to the cridibility [sic] of any witness and in weighing the testimony of any witness you may consider his demeanor, and the behavior of the witness on the witness stand, the witness' manner of testifying, whether the witness impresses you as a truth-telling individual, whether the witness impresses you as having an accurate memory and recollection, and whether the witness has any interest in the outcome of the case. All of those matters, as well as any other factors

that may appear to you as having a bearing in the matter, you may consider in weighing and determining what witnesses to believe and to what extent to credit them. If you find that any witness willfully testified falsely as to any material fact concerning which the witness could not have possibly been mistaken, you are then at liberty if you deem it wise to do so, to disregard the entire testimony of any such witness, or any part of the testimony of such witness.

"The defendant is permitted to become a witness in his own behalf, but in weighing his testimony you have a right to consider that he is highly interested as a witness and very much interested in the outcome of the case."

It is the last paragraph of the above-quoted instruction which the accused ▮ contends was prejudicially erroneous. This same error was asserted in United States v Nash, 5 USCMA 550, 18 CMR 174, and we held there was no prejudice to the accused. In disposing of that case, we stated:

"While we have issued a caveat against the particular language employed in the charge to the court-martial we find no prejudice in the instruction given here. It came at the end of a series of instructions on credibility of witnesses and it blended into the general subject matter. Common sense dictates that an accused has an interest in the outcome of a prosecution against himself and the court members would be cognizant of the fact without being told. The emphasis employed by using the adjectives 'highly' and 'very much' in the instruction would not affect the members in their deliberations."

While we believe it to be a better practice not to single out the accused, there is no gainsaying the fact that one being tried for a crime has a deep personal interest in the outcome of the suit. The Supreme Court of the United States recognized the validity of that statement in Reagan v United States, 157 US 301, 15 S Ct 610, 39 L ed 709. In that instance the trial judge informed the jury it might consider the deep personal interest the defendant might have in the outcome of the suit. In answering accused's contention of error Mr. Justice Brewer speaking for the Court said:

"The import of these authorities is that the court is not at liberty to charge the jury directly or indirectly that the defendant is to be disbelieved because he is a defendant, for that would practically take away the benefit which the law grants when it gives him the privilege of being a witness. On the other hand, the court may, and sometimes ought, to remind the jury that interest creates a motive for false testimony; that the greater the interest the stronger is the temptation, and that the interest of the defendant in the result of the trial is of a character possessed by no other witness, and is therefore a matter which may seriously affect the credence that shall be given to his testimony. The court should be impartial between the government and the defendant . . . . in behalf of the government, the court may charge the jury that the peculiar and deep interest which the defendant has in the result of the trial is a matter affecting his credibility, and to be carefully considered by them."

Because the first part of the instruction in the case at bar lays down the proper rule applicable to all witnesses and the latter part does not go beyond legitimate limits in pointing out a relevant factor in credibility, we are satisfied the rationale of United States v Nash, supra, applies and is dispositive of the first issue. This assignment is, therefore, determined adversely to the accused.

II

The second alleged instructional deficiency arises out of the contention that the law officer failed to instruct in accordance with Article 51(c)(2) of the Uniform Code of Military Justice, 10 USC § 851. That subsection of the Code provides that an instruction conveying the following principle must be included in the charge:

"(2) that in the case being considered, if there is a reasonable doubt as to the guilt of the accused, the doubt must be resolved in favor of the accused and he must be acquitted."

It is true, as asserted by the appellate defense counsel, that the instruction is not set out verbatim in the ▮ law officer's charge to the court. However, the particular words and phrases used are unimportant if the idea is expressed and when we examine the instructions by their four corners, we conclude the law officer adequately covered the subject matter. To illustrate the point, we quote several of the instructions given by him:

"Every defendant in a criminal case is presumed to be innocent. This presumption of innocence attaches to the defendant throughout the trial. The burden of proof is upon the Government to prove the defendant guilty beyond a reasonable doubt. Unless the Government sustains its burden and proves beyond a reasonable doubt that the defendant has committed every element of the offenses of which he is here charged, the court must find him not guilty.

". . . In other words, proof beyond a reasonable doubt is proof that will result in an abiding conviction of the defendant's guilt on your part. Such a conviction that you would be willing to act upon in a more important and weighty matter relating to your own affairs."

"In determining whether the Government has established the charges against the defendant beyond a reasonable doubt, you must consider the testimony of all witnesses who have testified here before you, and all the circumstances concerning which testimony has been introduced in this case. If there is reasonable doubt as to the degree of guilt, then the finding must be in a lower degree as to which there is no reasonable doubt."

"Corroboration is not sufficient which merely shows that the commission of the offense, or the circumstances thereof, but it is not necessary that the evidence go so far as to establish by itself, and without the aid of the testimony of the accomplice, that the defendant committed the crime, as charged. And if there be sufficient corroboration of the evidence outside of that given by the accomplice, which, when considered together with other testimony of such accomplice will satisfy your minds of the guilt of the defendant McClary beyond a reasonable doubt, then the guilt of the defendant McClary is sufficiently established."

and

"Now, I also advise you that if you have a reasonable doubt that the property was of the value alleged in each of the numbered specifications of both Charges I and II, or any one of them, that you are satisfied by legal and competent evidence beyond a reasonable doubt that the property was of a lesser value, you may, nevertheless, reach a finding of guilty, but in this event it will be necessary for you to modify each of the said specifications as to which you have such doubt by exceptions and substitutions so that each such specification will reflect the finding as to which you have no reasonable doubt."

In addition, as to all of the alleged offenses, the law officer specifically informed the court that before it could find the accused guilty, the members must be satisfied by legal and competent evidence beyond a reasonable doubt that the Government had proved the particular elements of each offense. His charge was otherwise full and complete and sufficiently satisfied counsel for parties at the trial as no objections were taken and no requests for additional instructions were submitted.

An inspection of Article 51 and the instructions given by the law officer will disclose that the only deficiency, if any, was that the court members were not informed they should resolve any doubt of guilt in favor of the accused. But they were informed that if the Government did not prove beyond a reasonable doubt every element of the offense, they must acquit the accused. The defense in the case was an alibi and the only

doubt which could have arisen under that defense was the participation of the accused in the taking and selling. If the court followed the instruction of the law officer, it had to find beyond a reasonable doubt that he was present and shared in a common venture. Even if we were to go so far as to assume that value was uncertain, the court was instructed to resolve any doubt in that regard in favor of the accused by finding the value in the lesser amount as to which there was no reasonable doubt. This same guidance was given on lesser included offenses. Any fair-minded court-martial member could not consider these instructions in their entirety and arrive at a conclusion other than that if he had a reasonable doubt about the guilt of the accused or any element of any offense, he had to resolve it in accused's favor and acquit him or reduce the alleged crime. Accordingly, we find this assignment of error to be without merit.

### III

The certified question presents the principal issue in this case. The board of review, relying upon ▆ United States v Brown, 8 USCMA 18, 23 CMR 242, as its authority, concluded the specification alleging theft and the specification alleging the subsequent sale of the same Government property did not state separate offenses for punishment purposes and that the law officer erred in his instructions on the maximum imposable sentence. We believe the board broadened the intended scope of our holding in that case. It may well be, as the board reasoned, that the accused was actuated by a single impulse to enrich himself at the expense of the Government but, even though that be the case, still more than one criminal act was committed by him in accomplishing his venture. Here the accused asported the property, secreted it, and then subsequently sold the same to third persons. At least a full day elapsed between the takings and disposals. It is obvious from his method of operation that he possessed dual intents— that is, an intent to steal and an intent to sell—and while they may have been formed simultaneously, the sequence of events was such that they were severable and he could have abandoned his intent to dispose of the goods after he had executed his plan to steal. In that event, there would have been only a violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. Further, had he been apprehended in the course of the asportation, there would have been no violation of Article 108 of the Code, 10 USC § 908.

For the purpose of deciding this case, we are willing to assume the plan to steal and sell was formed as part of a unitary mental process. Even when we make this assumption, our previous rulings do not require a holding of multiplicity. Generally speaking, in determining multiplicity we have used the Manual test which provides that the offenses are separate if each offense requires proof of an element not required to prove the other. In some instances, that principle has been rejected because it was believed its use would violate the cardinal principle of law that a person may not be twice punished for the same crime. However, this does not mean it is to be disregarded when there are two or more separate criminal acts, even though they grew out of essentially one overall transaction. In this case it can be argued that as to each item of Government property, there were two separate transactions with supporting criminal intents, but, disregarding that contention and confining our views to the same transaction rule, we believe these offenses are separate.

United States v Brown, supra, was a peculiar case on its facts. There, both the theft and the wrongful disposition were proved by the single act of transferring possession. The evidence which proved one offense established the other, and neither was lesser included in the other. In that factual background, a majority of the Court concluded the offenses were multiplicious because:

". . . The difference between the sale or other unauthorized disposition provision of Article 108 and the general provisions of Article 121, when only one act is committed is a difference more of form than of sub-

**151**

stance. We are persuaded then that when a single act violates both Articles, it was not intended that the offender be subjected to two punishments. We hold, therefore, that the charges are multiplicious."

We have no such situation in the case at bar. Here, we are confronted with the usual "black-marketing" operation where the source of the merchandise is the Government and the outlet foreign nationals. There is a positive violation of two distinct Congressional statutes, and there is no compelling reason for us to say that fairness to the accused requires us to limit punishment to one. The crime of selling Government property is complete without regard to the manner in which possession is obtained, and the offense of stealing is committed regardless of the manner in which the thief later deals with the property, pretermitting an intent to return at the time of the taking. Thus, larceny of Federal property requires proof of a wrongful taking which is not necessary in the sale of Government property. And sale of Government property does not require proof of wrongful taking. By way of fitting the rule to the facts of a case, we hypothesize the situation we have mentioned previously. The accused could have taken the property with intent to sell and thus have formed the necessary intents for both offenses. However, prior to the selling and because of fear of detection, he could have concluded to retain possession of the merchandise. Under that state of facts, the accused would be guilty of larceny but not of wrongful disposition of Government property. Illustrations could be multiplied, but such a course is not dictated because this sale is so truly isolated from the theft by time and other circumstances that it calls for the application of the elemental test. Without seeking to reconcile all the legal niceties which have divided the members of this Court in their conclusions on multiplicity, it can be said that here the accused committed offenses which are clearly and distinctly shown to be separate.

Accordingly, the certified question is answered in the negative. The decision of the board of review is reversed and the record is returned to The Judge Advocate General of the Army for further action not inconsistent with this opinion.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in the result) :

I concur in the result only. A majority of the Court has not universally applied the Manual test that the offenses are separate if each offense requires proof of an element not required to prove the other. On the contrary, it was recognized as early as United States v Soukup, 2 USCMA 141, 7 CMR 17, that the Manual "standard may not serve accurately and safely in all situations." See, for example, United States v Redenius, 4 USCMA 161, 15 CMR 161; United States v Beene, 4 USCMA 177, 15 CMR 177; United States v Brown, 8 USCMA 18, 23 CMR 242.

However, the larcenies and unlawful disposition and sale in the instant case were clearly separate transactions and punishable as separate crimes under any of the criteria applied by this Court. Although the desirability of punishing an accused both for larceny of property and a subsequent wrongful sale of the same property might be questioned, the wisdom of the statute is for the Congress and the practical application thereof requires the exercise of sound judgment, discretion, and common sense on the part of the military.