UNITED STATES, Appellee

v

GLENN A. GIBBONS, Private First Class, U. S. Army, Appellant

11 USCMA 246, 29 CMR 62

No. 13,210

Decided February 12, 1960

*First Lieutenant Frank J. Lane, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ralph Herrod.*

*First Lieutenant Allen I. Saeks* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. Mc-Conaughy* and *First Lieutenant Paul R. Walsh.*

### Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused entered pleas of guilty to larceny, forgery, and uttering a forged instrument, in contravention of Articles 121 and 123 of the Uniform Code of Military Justice, 10 USC §§ 921 and 923, respectively. Lower appellate reviewers affirmed the findings and only so much of the original sentence as provides for dishonorable discharge (suspended), total forfeitures of pay and allowances, and confinement at hard labor for one year and six months. We granted accused's petition for review to dispose of his contention that the two offenses of forgery and uttering a

246

forged document are multiplicious for purposes of sentence.

While the plea of guilty throws little light on the facts and circumstances surrounding the offenses actually committed, trial counsel, to aid the court in assessing an appropriate sentence, introduced in evidence without objection by the defense a voluntary pretrial statement of the accused. This furnishes us with a summary of the facts which aid in a solution of the problem. From his confession and the specifications to which accused pleaded guilty, it appears that the forgery of the check and its utterance took place in San Antonio, Texas, on or about September 4, 1958. Some three days prior thereto accused surreptitiously removed the check from a mailbox and retained possession of it until the day he placed it in commercial channels. On the above-mentioned date, the accused forged the name of the payee on the back of the check and sometime thereafter on the same day he proceeded to an acceptance company where he negotiated the instrument. It thus becomes apparent that the two offenses with which we are concerned in the issue before us involved two separate acts on the part of the accused which were not contemporaneous, and likewise that here one crime is not lesser included within the other. These factors differentiate this case from United States v Brown, 8 USCMA 18, 23 CMR 242; United States v Modesett, 9 USCMA 152, 25 CMR 414; and United States v Posnick, 8 USCMA 201, 24 CMR 11.

Because the accused could have forged the check without uttering it and conversely he could have negotiated it without having forged the instrument, we believe the doctrine we recently announced in United States v McClary, 10 USCMA 147, 27 CMR 221, is dispositive of this appeal. In that case we stated:

". . . It may well be, as the board reasoned, that the accused was actuated by a single impulse to enrich himself at the expense of the Government but, even though that be the case, still more than one criminal act was committed by him in accomplishing his venture. Here the accused asported the property, secreted it, and then subsequently sold the same to third persons. At least a full day elapsed between the takings and disposals. It is obvious from his method of operation that he possessed dual intents—that is, an intent to steal and an intent to sell—and while they may have been formed simultaneously, the sequence of events was such that they were severable and he could have abandoned his intent to dispose of the goods after he had executed his plan to steal. In that event, there would have been only a violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. Further, had he been apprehended in the course of the asportation, there would have been no violation of Article 108 of the Code, 10 USC § 908.

"For the purpose of deciding this case, we are willing to assume the plan to steal and sell was formed as part of a unitary mental process. Even when we make this assumption, our previous rulings do not require a holding of multiplicity. Generally speaking, in determining multiplicity we have used the Manual test which provides that the offenses are separate if each offense requires proof of an element not required to prove the other. In some instances, that principle has been rejected because it was believed its use would violate the cardinal principle of law that a person may not be twice punished for the same crime. However, this does not mean it is to be disregarded when there are two or more separate criminal acts, even though they grew out of essentially one overall transaction. In this case it can be argued that as to each item of Government property, there were two separate transactions with supporting criminal intents, but, disregarding that contention and confining our views to the same transaction rule, we believe these offenses are separate."

Applying the principle set out above to the facts of this case, we find that here there were two separate criminal acts committed at different times and

involving separate elements and different general criminal intents. Forgery requires a showing that a person, with the requisite intent, falsely made or altered a signature to or other part of any writing which would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice. In the case at bar, this particular offense was completed before the accused set out to present the check for payment. Had he lost the check before presentment, he could have been convicted of forgery. Apart from intent to defraud, the second crime merely requires the utterance of a document knowing it to be falsely made or altered. In this offense, there are the elements that the document be uttered by the accused and that he knows it is forged, but the forgery could be by a third party. Accordingly, we conclude that each specification alleges and the facts show offenses which are separate for punishment purposes.

There are a number of Federal cases which support our view. Indeed, in United States v McVey, 4 USCMA 167, 15 CMR 167, we adverted to one. See Wiley v United States, 144 F2d 707 (CA 9th Cir) (1944). There would be little utility in collating them here, however, for the law appears well settled on this point. For the purposes of this case, we will refer only to Reid v Aderhold, 65 F2d 110 (CA 5th Cir) (1933). We select that case because it involved a law governing the District of Columbia, and the wording of the statute and its arrangement are strikingly similar to Article 123 of the Uniform Code, supra. That court, in answer to a contention similar to the one advanced herein, made the following statement of law:

"At common law forgery and uttering were different substantive crimes. Bishop's New Criminal Law, §§ 523–605. The rule is well settled that, where different offenses denounced in the same statute require different proof, a person may be found guilty of more than one offense under the statute. Petitioner might have been guilty of forging a check without having attempted to utter it, and he might have been guilty of separately

**248**

uttering it to two or more people without having forged it. It is apparent the three offenses charged in the indictment required different proof to substantiate the charges."

For the foregoing reasons, we conclude the accused is not entitled to relief, and the decision of the board of review is, therefore, affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):
I dissent.

In my opinion, the separate specifications of falsely making a signature on the endorsement to the check here involved and the uttering of the same instrument on the same day are multiplicious for sentencing purposes.

Pursuant to his plea, the accused was found guilty of stealing a Government check, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921; falsely endorsing the signature of the payee thereon, in violation of Code, supra, Article 123, 10 USC § 923; and uttering the same check to an acceptance company, also in violation of the latter Article. Intermediate appellate authorities affirmed, and we granted review on the issue whether the specifications involving the false making of the endorsement and the uttering of the check alleged offenses separate for the purpose of sentencing the accused.

On or about September 1, 1958, accused stole the check involved from the mailbox of its payee. He retained possession of the instrument until September 4, 1958. On this date, he falsely endorsed the signature of the payee on the check and proceeded to the Southwest Accceptance Corporation. There, he presented it to the cashier, who applied a portion of the proceeds to accused's car payment and gave him a cash balance of $65.02.

Code, supra, Article 123, provides:
"Any person subject to this chapter who, with intent to defraud—
(1) falsely makes or alters any signature to, or any part of, any writing which would if genuine, apparently impose a legal liability on

another or change his legal right or liability to his prejudice; or

(2) utters, offers, issues, or transfers such a writing, known by him to be so made or altered;

*is guilty of forgery* and shall be punished as a court-martial may direct." [Emphasis supplied.]

It is clear to me that the quoted statute, on its face, abolishes the normal distinction between the common-law crimes of forgery and uttering and provides only for the punishment of one offense which may be committed in two ways. United States v Redenius, 4 USCMA 161, 15 CMR 161; United States v Rosen, 9 USCMA 175, 25 CMR 437.

In United States v Redenius, supra, and United States v Johnson, 5 USCMA 297, 17 CMR 297, we were required to determine whether an accused could be punished for separate counts of desertion growing out of the same period of absence without leave in view of the different subsections of the Code, supra, Article 85, 10 USC § 885. We had no hesitancy in pointing out that the separate specifications could not be utilized by a court-martial as a ground for adjudging a greater sentence. The basis of our decision was the conclusion that Article 85 sought to punish only one offense—desertion—and its varying subsections merely set forth different methods of committing that delict. I point out to my brothers the similarity between the terminal language of Code, supra, Article 85, and that used in Article 123.

In United States v Rosen, supra, we were confronted with allegedly separate charges which are almost identical to those now confronting us. In that case, accused was found guilty of a number of specifications alleging violations of Code, supra, Article 132, 10 USC § 932. We held that the statute in question punished only one offense—the making of false claims against the United States—and that the numerous acts set forth therein were merely descriptive of the proscribed conduct. Of particular pertinence is our notation that the accused therein allegedly *"forged the signature* of H. V. Judson on military pay order number 2 Hq Co 98 (specification 8); and that for the purpose of obtaining payment of the claim *he used the signature* of H. V. Judson on the same military pay order which signature he knew to be false (specification 11)." United States v Rosen, supra, at page 177. We also pointed out in that case, with respect to the multiplicious nature of such charges, at page 177:

". . . In our opinion, each group of four specifications relating to an individual pay order states but a single offense. Although the specifications charge violations of different subdivisions of Article 132 . . . *the evidence shows that the acts 'are not separate steps in the same transaction—they merge into one step.'"* [Emphasis supplied.]

See also United States v Smith, 7 USCMA 102, 21 CMR 228.

Turning again to the instant case, it is quite clear that Congress sought, in Code, supra, Article 123, to provide for a single offense of forgery which might be committed in either of two ways. In the words of the presentation of the Department of Defense before the House Armed Services Committee, the Article "combines" the common-law offenses of forgery and uttering. Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, page 1233. Thus, we are confronted with the same situation before us in United States v Rosen, supra. Moreover, it is clear that accused's false making of the endorsement in question was not a separate step in one transaction but part of the unitary process of uttering the check for payment. In this connection, it should be noted that both the making and uttering took place with respect to the same instrument and on the same day. Accordingly, I believe that punishment should be visited upon the defendant only for one of the two specifications charged as violations of Article 123.

It is urged that our decision in United States v McClary, 10 USCMA 147, 27 CMR 221, is dispositive. In that case, we dealt with an accused who had stolen Government property, secreted it, and subsequently sold it. It may safely be

distinguished. As was pointed out therein, at page 151:

". . . Here the accused asported the property, secreted it, and then subsequently sold the same to third persons. *At least a full day elapsed between the takings and disposals. It is obvious from his method of operation that he possessed dual intents—that is, an intent to steal and an intent to sell—and while they may have been formed simultaneously, the sequence of events was such that they were severable and he could have abandoned his intent to dispose of the goods after he had executed his plan to steal.*" [Emphasis supplied.]

Were we faced with the issue of the separability of the charges that accused stole the check and his subsequent false dealings with it, there is no doubt that our holding in *McClary*, supra, would be applicable. However, we now are involved only with the accused's disposition of the item stolen. His actions with reference to the making of the endorsement and cashing the check were colored with only one intent—that of defrauding the payee or the Government. Both the making of the payee's signature and the uttering of the instrument were indispensable prerequisites to the execution of this single mental element. Hence, United States v McClary, supra, is simply not applicable.

It is also stated that we should heed the rule in Federal jurisdictions and hold that forging and uttering the same check are separate offenses for purposes of punishment. See Wiley v United States, 144 F2d 707 (CA 9th Cir) (1944), and Reid v Aderhold, 65 F2d 110 (CA 5th Cir) (1933). These cases, however, involve statutes substantially different from Code, supra, Article 123, and which punish forgery and uttering as separate crimes. See 18 USC § 495 and District of Columbia Code, Title 6, § 86 (1929 ed). Accordingly, Federal decisions should not control our approach to the problem. It is also worthy of note that even those courts have not always adopted the concept that the two crimes may both be used for the basis of imposing sentence. Thus, in United States v Carpenter, 151 Fed 214 (CA 9th Cir) (1907), it was stated, at page 215:

". . . But it has been generally held that the forging and uttering a forged instrument are parts of one transaction, and that, where the different counts of an indictment charge different crimes which are parts of a single transaction, the sentence based on a general verdict or plea of guilty must impose only one penalty, . . . [Citing cases.]"

I suggest to my brothers that the change in approach in the Federal courts as evidenced by the decision in United States v Carpenter, supra, and Reid v Aderhold, supra, may well be based upon changes in the Federal statutory law rather than in any concept that the offenses are basically different.

In sum, then, I am of the opinion that Code, supra, Article 123, should be construed to punish only one offense and that our decision in United States v Rosen, supra, is dispositive of the case before us. I must, therefore, conclude that the law officer erred prejudicially when he informed the members of the court-martial that they might sentence accused to a term of confinement not to exceed fifteen years. In my view, the proper limitation was ten years.

I would reverse the decision of the board of review and order a rehearing on the sentence.