UNITED STATES, Appellee,

v.

Specialist Four Charles L. WEST, U.S. Army, Appellant.

No. 44586.

SPCM 17730.

U.S. Court of Military Appeals.

Jan. 30, 1984.

For Appellant: *Captain Rita R. Carroll* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel R. Rex Brookshire II, Major Paul J. Luedtke, Captain David M. England, Captain Warren G. Foote* (on brief); *Captain William T. Wilson.*

For Appellee: *Captain Edmond R. McCarthy, Jr.* (argued); *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Major Patrick M. Flachs, Captain Mark S. Julius, Captain Glenn D. Gillett,* and *Captain David A. Brown* (on brief).

*Opinion of the Court*

PER CURIAM:

At his special court-martial, appellant was convicted of larceny of a .45-caliber pistol, property of the United States, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921, and wrongful disposition of this same piece of government property, in violation of Article 108, UCMJ, 10 U.S.C. § 908.[1] We granted review to consider the propriety of the charge under Article 108. 15 M.J. 51 (1982). In this connection we have considered the historical evolution of Article 108 and our governing precedent and find no basis to deviate from the rule laid down in *United States v. McClary,* 10 U.S.C.M.A. 147, 27 C.M.R. 221 (1959).

It was settled at trial that appellant, a small arms repairman, removed a .45-caliber weapon, the property of the United States Government, from the arms room where he was employed. Five days later he transferred this weapon to another servicemember. The evidentiary basis, in light of precedent, for these facts demonstrates that, absent a contrary statutory historical rationale, both convictions may stand.

---

1. A military judge sitting alone at Fort Hood, Texas, on April 23, 1982, sentenced appellant to a bad-conduct discharge, confinement at hard labor for 5 months, forfeiture of $75.00 pay per month for 5 months, and reduction to the lowest enlisted grade. Pursuant to a pretrial agreement, the convening authority approved the sentence, and the United States Army Court of Military Review affirmed.

*United States v. McClary, supra; cf. United States v. Brown,* 8 U.S.C.M.A. 18, 23 C.M.R. 242 (1957).

■ A comprehensive review of the evolution of the Uniform Code of Military Justice from its predecessor Articles of War (A.W.) demonstrates that criminal taking and disposition of military property have been chargeable at sundry times under various articles.[2] We have examined these in some detail and are unable to perceive a prior historical intersection which would render the present charges under Articles 121 and 108 multiplicious. Article 108 "consolidat[ed] A.W. 83 and 84 . . . remov[ing] the distinction between issued and nonissued military property, and applies to all persons subject to the code." Hearings on H.R. 2498 Before a Subcommittee of the House Armed Services Committee, 81st Cong., 1st Sess., reprinted in *Index and Legislative History, Uniform Code of Military Justice* 1230 (1949). In keeping with modern civil trends, Article 121 was enacted and "combine[d] the offenses of larceny by asportation, larceny by trick and device, obtaining property by false pretenses, and embezzlement." *Id.* at 1232. We remain convinced that the rule is correct that the enactment of Articles 108 and 121 created "two distinct Congressional statutes, and there is no compelling reason for us to say that fairness to the accused requires us to limit punishment to one." *United States v. McClary, supra* at 152, 27 C.M.R. at 226.

The decision of the United States Army Court of Military Review is affirmed.

EVERETT, Chief Judge (dissenting):

Appellant was convicted under Article 121 of the Uniform Code, 10 U.S.C. § 921, of larceny of a .45-caliber pistol which was military property of the United States and under Article 108(1), UCMJ, 10 U.S.C. § 908(1), of wrongful disposition of that weapon to another servicemember five days later. I disagree with the majority's conclusion that he can lawfully be convicted under both Articles when each offense involves the same piece of military property.

In support of its conclusion, the majority cites *United States v. McClary,* 10 U.S. M.A. 147, 27 C.M.R. 221 (1959), and *United States v. Brown,* 8 U.S.C.M.A. 18, 23 C.M.R. 242 (1957). In *Brown,* the accused had been convicted of wrongful disposition of an Air Force parka and larceny of the same item at the same time. The Court concluded that the two offenses were not separately punishable, because the differences between them were

> illusory when applied to a situation in which there is but one act by the accused. No example has been presented to us, nor have we been able to imagine one, in which the disposition of the property of another does not disclose an intent to transfer ownership or possession either temporarily or permanently.

> \*   \*   \*   \*   \*   \*

> *From the standpoint of proof, therefore, there is no difference between the two offenses.* Evidence sufficient to establish an act of wrongful disposition would be sufficient to prove the accused's intent. Thus, aside from the character of the property, inevitably the "evidence sufficient for conviction under the first charge would . . . have convicted under the second." [Citation omitted.]

> \*   \*   \*   \*   \*   \*

Unquestionably, Congress can make "each stick in a faggot a single criminal unit," but when it is doubtful as to whether it intended to do so, the doubt should be "resolved against turning a single transaction into multiple offenses." *Bell v. United States,* 349 US 81, 83–84, 99 L ed 905, 75 S Ct 620 (1955). *The difference between the sale or other unauthorized disposition provision of Article 108 and the general provisions of Article 121, when only one act is committed is a difference more of form than of substance.*

---

2. *See generally* W. Winthrop, *Military Law and Precedents* 556–57, 685, 697 (2d ed. 1920 Reprint); F. Wiener, *The New Articles of War;* G.

Davis, *A Treatise on the Military Law of the United States* 361–65, 369–74, 449, 462 (1913).

8 U.S.C.M.A. at 19, 20, 23 C.M.R. at 243, 244 (emphasis added).

In *United States v. McClary, supra,* the theft of government property occurred on November 5, 1957, and the sale of the same property took place on November 7. The Court distinguished *Brown,* where "both the theft and the wrongful disposition were proved by the single act of transferring possession." *Id.* at 151, 27 C.M.R. at 225. I presume that the majority intends to limit its holding here to those situations where, as in *McClary,* there is an interval of time between the theft of the property and its disposition to a third person. Moreover, in their supplemental brief and in oral argument, appellate government counsel indicated their acceptance of such a limitation.

I have come to the conclusion, however, that such difference is untenable, and that the two offenses are multiplicious for purposes of findings even when an interval elapses between larceny of the property and its transfer by the accused to some third person. Under the reasoning of *Brown,* it appears that larceny of military property constitutes a wrongful disposition thereof and that a wrongful disposition under Article 108 constitutes either a larceny or wrongful appropriation under Article 121. If the difference between the two is "more of form than of substance," *United States v. Brown, supra,* a specification alleging one of these offenses would seem to "fairly embrace[ ]" the other within the meaning of the test for multiplicity as to findings established in *United States v. Baker,* 14 M.J. 361, 368 (C.M.A.1983).

From this premise about the relationship between the two offenses, certain consequences seem to follow. One of these consequences—perhaps harsh for an accused servicemember—is that he may properly be convicted of wrongful disposition of military property even though he has not transferred it to someone else.[1] Indeed, in at least one case that reached our Court, the accused had been convicted of larceny of

government property in violation of Article 108. *See United States v. Varnado,* 7 U.S. C.M.A. 109, 21 C.M.R. 235 (1956).

A second consequence is that, if West wrongfully disposed of the pistol within the meaning of Article 108(1) when he stole it, then Congress did not intend for him to be found guilty of committing the same offense five days later when he delivered the weapon to someone else. Here, he has already wrongfully disposed of the pistol by stealing it, and so he cannot be prosecuted for another wrongful disposition. The situation is somewhat akin to that of a person who has stolen property and cannot thereafter be convicted of receiving the same stolen property. *See United States v. Cartwright,* 13 M.J. 174 (C.M.A.1982).

The injury to the Government towards which Article 108 is directed has taken place when the military property is stolen, and the subsequent transfer of the property is only an aggravating circumstance. Under this view it is difficult to reconcile *McClary* with *Brown,* except by explaining *Brown* on a ground not articulated by the Court—namely, that where two offenses result from a single act and a single impulse, they are multiplicious for punishment purposes.

"Article 108 . . . represents a consolidation of Articles of War 83 and 84," *United States v. Faylor,* 8 U.S.C.M.A. 208, 209, 24 C.M.R. 18, 19 (1957); and I find nothing in the language of these earlier statutes which is at odds with my interpretation of the relationship between Articles 108(1) and 121. Moreover, the holding in *Faylor* that unauthorized abandonment of military property constitutes a disposition within the meaning of Article 108(1) actually supports my position, because the Court there made clear that guilt of wrongful disposition does not require that an accused deliver possession of the military property to someone else.

I recognize that at a time when, as now, terrorism abounds, there is special concern

---

1. Whether the intent is to deprive the United States of the property permanently would be immaterial to my interpretation of Article 108(1), Uniform Code of Military Justice, 10 U.S.C. § 908(1).

that military property—especially weapons—not reach the wrong hands. Thus, it would be quite understandable if Congress chose to prohibit separately the delivery of military property to unauthorized persons and to make this act separately punishable even when accompanied by a charge of larceny. If such legislative intent were evident, it should make no difference whether the delivery of military property coincided with the larceny or wrongful appropriation, as in *Brown,* or was accomplished at a different time, as in *McClary.*

However, a quarter of a century ago, this Court rejected this interpretation of Article 108(1), when we said, in *Faylor,* that "it is not concerned with improper receipt of military property, but with its improper disposition." There the Court also observed:

> Whatever the result so far as ultimate recovery is concerned, an abandonment is unquestionably a surrender of dominion and control over the property for the time it is out of the hands of authorized persons. If there is no recovery, the disposition of the property is as complete as a sale, gift, or exchange. If there is recovery, the Government is still as much deprived of the use of the property as though it had been improperly loaned.

*United States v. Faylor, supra* at 209, 24 C.M.R. at 19.

Obviously, the gravamen of Article 108 is the loss to the United States of the benefit and use of military property. This was also the gravamen of the ninth paragraph of Article of War 94, which grouped larceny, embezzlement, and misappropriation of "property of the United States furnished or intended for the military service thereof" with wrongful or knowing sale or disposition of such property. Likewise, it seems to be the gravamen of 18 U.S.C. § 641, which places embezzlement, stealing, purloining, or knowing conversion to one's own use of property of value of the United States or any department thereof together with unauthorized sale, conveyance or disposition of such property.[2]

Since larceny or wrongful appropriation of military property inevitably inflicts upon the Government a loss of the benefit and use of such property, it seems clear to me that either of these offenses constitutes wrongful disposition for purposes of Article 108(1). Therefore, since appellant wrongfully disposed of the pistol when he stole it, I conclude that Congress did not intend for him to be separately found guilty of committing the same offense when he delivered the weapon to another servicemember five days later.

**2.** In *Milanovich v. United States,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961), the Supreme Court concluded that, by enacting 18 U.S.C. § 641, Congress did not intend to multiply the offenses but only to reach a wider range of wrongdoers. *See also United States v. Cartwright,* 13 M.J. 174 (C.M.A.1982).