UNITED STATES, Appellee,

v.

Willie J. BANKS, Specialist Four, U.S.
Army, Appellant.

No. 46,180.
CM 442153.

U.S. Court of Military Appeals.

July 1, 1985.

For Appellant: *Captain David L. Carrier* (argued); *Captain William T. Wilson,* and *Captain Warren G. Foote* (on brief); *Colonel William G. Eckhardt.*

For Appellee: *Major Larry D. Williams* (argued); *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Captain Thomas E. Booth* (on brief); *Lieutenant Colonel Adrian J. Gravelle.*

## Opinion

COX, Judge.

The accused was tried by a general court-martial military judge sitting alone. He was convicted, despite his pleas, of larceny of government property; wrongful appropriation of government property; wrongful disposition of government property; willfully disobeying the order of a commissioned officer; disrespect to a commissioned officer; assault and battery; and the transfer and introduction of marihuana onto a military base, in violation of Articles 121, 108, 90, 89, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 908, 890, 889, 928, and 934, respectively. The adjudged and approved sentence extends to a bad-conduct discharge, confinement at hard labor for 14 months, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The Court of Military Review affirmed the findings and sentence. 15 M.J. 723 (1983).

We granted one issue and specified a second.

## SPECIFIED ISSUE

COULD APPELLANT BE PROPERLY CONVICTED AS A PRINCIPAL FOR WRONGFUL INTRODUCTION OF MARIHUANA ONTO A MILITARY INSTALLATION WHEN THE INTRODUCTION OCCURRED AFTER HE HAD TRANSFERRED THE MARIHUANA TO GOVERNMENT AGENTS OFF POST?

Three persons were involved in the events referred to in this issue: the accused; Private Charles Carrion; and Specialist Four Darrell Wilcher. Carrion, an undercover agent for the post Drug Suppression Team (DST), met Wilcher for the purpose of buying drugs. Wilcher professed not to have any, but claimed to know someone who did. Wilcher accepted Carrion's money, and then they went to the accused's on-post quarters. The accused took the money from Wilcher and agreed to take them to a place where marihuana could be obtained. After going to one place on post where they were unable to buy drugs, the parties decided to use Carrion's car to go off post to Browns Mills, New Jersey, to make their purchase. In Browns Mills, they went to an apartment complex where the accused left the car and entered a building. When he returned, he was carrying a bag containing a substance that was later determined to be marihuana. He handed the bag to Wilcher, who was in the back seat. Wilcher inspected the contents of the bag and gave it back to the accused. Carrion lifted the armrest of the car and told the accused to put the bag inside a storage compartment. The three men then returned to Fort Dix, where Carrion dropped off the accused and Wilcher at their quarters, and delivered the bag to an agent of the Criminal Investigation Division (CID).

Appellate defense counsel contend that the accused did not commit the crime of introducing the marihuana onto the post since it was actually in the possession of the government agent at that time. Appellate government counsel respond that the accused was properly convicted as a principal in the crime.

Because the case was tried by military judge alone, we have no way of knowing whether the judge convicted the accused of this specification on the theory that he was a principal to the offense of introduction of drugs onto a military installation or that he considered it to be a continuing offense. In similar factual situations, the Federal courts have interpreted 21 U.S.C. § 176a[1] to include criminal responsibility where the drug was imported into the United States

---

**1.** This section has been replaced by 21 U.S.C. § 952, *see* Pub.L.No. 91–513, Title III, § 1002, Oct. 27, 1970, 84 Stat. 1285.

by a government informant who was aided by government officials (*see United States v. Gould,* 419 F.2d 825 (9th Cir.1969)), or by a government agent (*see United States v. Meinster,* 619 F.2d 1041 (4th Cir.1980)).[2] The latter case concluded as follows:

> Active participation by a government agent, even in the critical act of transporting a controlled substance into the country, does not absolve other participants of the offense.

*Id.* at 1046.

In the case at bar, it is clear that the parties contemplated that the transfer of drugs would occur on post. It was only through chance that the accused did not have the drugs available and that his first source of supply also could not supply them. Thus, it was the accused's desire to consummate the sale which took the parties off post. It is also clear that the accused understood that Wilcher and Carrion would return with him to the post after the transaction was complete and, obviously, he could not have expected them to totally consume the drugs prior to their reentry onto the post. *United States v. Trottier,* 9 M.J. 337 (C.M.A.1980).

Here the offense of wrongful introduction of marihuana onto a military post began with the agreement and exchange of money on post; continued through the search for a supplier which eventually led off post; and did not conclude until the drugs were brought back on post. This offense is not fragmented into the mere transfer of drugs which occurred off post, but, instead, includes the continuum of actions which culminated in its introduction. *See United States v. Clay,* 2 M.J. 721 (A.F. C.M.R.1976).[3] The fact that the sale was completed off post and that the accused did not have exclusive possession of the drugs when he, Wilcher, and Carrion returned to the post does not absolve him of criminal complicity in the act of introduction.

Article 77, UCMJ, 10 U.S.C § 877, defines a "principal" as:

> "Any person ... who—
>
> (1) commits an offense punishable by this chapter, or aids, abets, counsels, commands, or procures its commission; or
>
> (2) causes an act to be done which if directly performed by him would be punishable by this chapter;
>
> is a principal."

There is ample evidence from which we can conclude that the accused "caused" the introduction of the marihuana onto the installation. Applying a commonly accepted definition of "proximate cause" from the legal lexicon, we readily conclude that the conduct of the accused was the efficient cause, without which the introduction would never have occurred.

The participation of the government agent in the introduction of the marihuana does not affect our decision here because the requisite *mens rea* existed in the mind of the accused to hold him responsible for the intended consequences of his acts.[4]

It should also be noted that the accused was convicted under Article 134, so the Government was required to prove that the introduction was service-discrediting or contrary to good order and discipline. It can be argued that because the intent of the government agent was to deliver the drugs to law enforcement officials on post, there was no possibility of the introduction being service-discrediting or prejudicial to good order and discipline. This same argument, carried to its logical extreme, would apply to the sale of drugs to any government agent because it is completely predictable that the drugs will eventually be

---

**2.** This case was tried under 21 U.S.C. §§ 952 and 960; *see also United States v. Gramlich,* 551 F.2d 1359 (5th Cir.1977).

**3.** *United States v. Clay,* 2 M.J. 721 (A.F.C.M.R. 1976), held that "the offense of sale of marihuana" began with an agreement on base, continued through the transfer of "marihuana ... off-base" to when the "marihuana was brought back onto the base" and where the transaction was "concluded." *Id.* at 723.

**4.** This is clearly distinguishable from *United States v. Bretz,* 19 M.J. 224 (C.M.A.1985), where both of the active participants were government agents.

sequestered from any possibility of illicit use. It has been recognized that using government agents to infiltrate drug rings is an accepted method of combating the illegal drug industry:

> Thus in drug-related offenses law enforcement personnel have turned to one of the only practicable means of detection: the infiltration of drug rings and a limited participation in their unlawful present practices. Such infiltration is a recognized and permissible means of investigation; if that be so, then the supply of some item of value that the drug ring requires must, as a general rule, also be permissible. For an agent will not be taken into the confidence of the illegal entrepreneurs unless he has something of value to offer them.

*United States v. Russell*, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). Like the Supreme Court, we decline to restrict government agents from using such tactics so long as they do not sink to the depths of "violat[ing] 'fundamental fairness' or [being] 'shocking ... to the universal sense of justice.' ... " *Id.*

We have held that the sale of drugs off post to a government agent constitutes an Article 134 offense. As the learned Chief Judge cogently wrote in *United States v. Trottier, supra* at 352–53:

> The appellant stood ready, willing, and able to sell to a fellow serviceman large quantities of marihuana and drugs for that serviceman to take back to his installation for use and sale; and the instant charges stem from the initial steps in that process. Such conduct is inimical to a fit and ready armed force; and it is, under those circumstances, appropriately subject to prosecution and punishment by the military.

It is the intent of the accused that defines the offense; there is no doubt that the intended offense was to the prejudice of good order and discipline.

For these reasons, the specified issue is answered in the affirmative.

GRANTED ISSUE

WHETHER APPELLANT CAN LAWFULLY BE FOUND GUILTY OF BOTH AN ARTICLE 108 AND AN ARTICLE 121 OFFENSE WHEN EACH OFFENSE INVOLVES THE SAME PIECE OF GOVERNMENT EQUIPMENT.

The evidence involved in this issue came largely from the testimony of Sergeant Fructuoso Camacho and the accused's confession. It appears that the accused, who worked in a supply facility, had accumulated a number of items which were excess to his accountability records. He approached Sergeant Camacho and asked Camacho to take the items to New York and sell them. Unbeknownst to the accused, Camacho had worked as a CID informant in the past and still considered himself to be in that status. Camacho attempted to notify a CID agent of the accused's scheme but was unsuccessful. He kept the items for a brief period and then turned them over to the post Central Issue Facility at the insistence of his company commander.

■ Appellate defense counsel argue that, because the property involved in the Articles 121 and 108 offenses is the same, the accused cannot be convicted of both offenses. Appellate government counsel counter that each offense requires proof of an element not required by the other, so the two offenses are separate for purposes of findings.

We considered this same argument in *United States v. McClary*, 10 U.S.C.M.A. 147, 27 C.M.R. 221 (1959). Finding the two offenses separate, we held:

> It may well be, as the board [of review] reasoned, that the accused was actuated by a single impulse to enrich himself at the expense of the Government but, even though that be the case, still more than one criminal act was committed by him in accomplishing his venture. Here the accused asported the property, secreted it, and then subsequently sold the same to third persons. At least a full day elapsed between the takings and disposals. It is obvious from his method of operation that he possessed dual in-

tents—that is, an intent to steal and an intent to sell—and while they may have been formed simultaneously, the sequence of events was such that they were severable and he could have abandoned his intent to dispose of the goods after he had executed his plan to steal. *Id.* at 151, 27 C.M.R. at 225.

More recently, in *United States v. West*, 17 M.J. 145 (C.M.A.1984), we reexamined the historical precedents underlying the offenses of the "criminal taking and disposition of military property." We concluded "that the rule is correct that the enactment of Articles 108 and 121 created 'two distinct Congressional statutes, and there is no compelling reason for us to say that fairness to the accused requires us to limit punishment to one.'" *Id.* at 146, *quoting United States v. McClary, supra* at 152, 27 C.M.R. at 226. We see no reason to depart from these established precedents. *Cf. United States v. Wolfe*, 19 M.J. 174 (C.M.A.1985).

Accordingly, the granted issue is answered in the affirmative. The decision of the United States Army Court of Military Review is affirmed.

Judge FLETCHER did not participate.

EVERETT, Chief Judge (concurring in the result).

I

In discussing Article 77, Uniform Code of Military Justice, 10 U.S.C. § 877, the Manual for Courts-Martial applicable at the time of appellant's trial explained:

The aider and abettor must share the criminal intent or purpose of the perpetrator .... It is possible that the aider and abettor, although sharing a common purpose with the perpetrator, may entertain an intent or state of mind either more or less culpable than that of the perpetrator, in which event he may be guilty of an offense of either greater or less seriousness than the perpetrator.

Para. 156, Manual for Courts-Martial, United States, 1969 (Revised edition). To me,

this language signifies that a servicemember cannot be convicted as a principal unless the person whom he aids could be convicted of some crime as a principal. In this case, Private Charles Carrion, the government agent, could not be convicted of wrongful introduction of the marihuana onpost because he lacked criminal intent and had implied authority to bring the illegal substance to law enforcement officials at Fort Dix. My analysis here is akin to that which would apply if appellant and Carrion had been charged with conspiring to introduce the marihuana, in which event appellant could not be convicted because the government agent would not be sharing the criminal intent, as is required for a conspiracy conviction. *See United States v. LaBossiere*, 13 U.S.C.M.A. 337, 340, 32 C.M.R. 337, 340 (1962).

Although the Government did not rely on an asserted agency relationship, as it did in *United States v. Bretz*, 19 M.J. 224 (C.M.A. 1985), I conclude that the evidence sufficed to establish that appellant "cause[d]" the introduction of the marihuana into Fort Dix. *See* Article 77(2). Banks knew that he and Wilcher had gone only a short distance offpost in the car of Carrion, the intended purchaser. Appellant believed that the marihuana was being acquired by Carrion for "personal use"—presumably, in the buyer's onpost quarters. According to Carrion, appellant placed the marihuana under the armrest in the car. It was understood by everyone that Banks and Wilcher were to return to their quarters onpost in Carrion's car. No likelihood existed that, after purchase, the marihuana would be left, used, or otherwise disposed of outside the boundaries of Fort Dix. In view of the immediacy and inevitability of the result—namely, taking the marihuana onpost—it makes no difference that Carrion, the government agent, transported the drug in his vehicle.

Appellant was prosecuted under Article 134, UCMJ, 10 U.S.C. § 934; and so the Government was required to establish that the introduction of marihuana was service-discrediting or contrary to good order and

discipline. *See United States v. Bretz, supra* at 227. Because the introduction was accomplished by an undercover agent who was planning to deliver the illegal substance to law enforcement officials onpost, I have some concern that "under the circumstances here, the transaction did not affect either the reputation or the discipline of the armed services." *Id.* at 227–28. However, Judge Cox's opinion has persuaded me that, under our precedents, the Government's evidence was adequate on this issue and that the situation here is distinguishable from *Bretz*. Fortunately, now that Article 112*a* of the Uniform Code has taken effect, such an issue will no longer be presented, because proof of drug offenses no longer requires a showing that the conduct was service-discrediting, contrary to good order, or in violation of any regulation.

II

In *United States v. West*, 17 M.J. 145 (C.M.A.1984), I stated my view that simultaneous conviction for larceny of government property and wrongful sale or disposition of that same property contravenes congressional intent. My position was rejected by the majority. Rather than prolong the debate, I shall simply note that I still believe that my interpretation was correct; but, in the interest of *stare decisis*, I shall express no further dissent on this issue.